Michael L. Rodenbaugh (California Bar No. 179059)
Marie E. Richmond (California Bar No. 292962)
LOZA & LOZA LLP
305 N. Second Ave., #127
Upland, CA 91786

*Attorneys for SiteTools, Inc. and Philip Ancevski*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| POCKETBOOK INT'L SA, | : | Case No.: 2:20-CV-8708 |
| | : | |
| Plaintiff, | : | **DEFENDANTS' NOTICE OF** |
| | : | **MOTION AND MOTION TO** |
| vs. | : | **DISMISS FOR FAILURE TO** |
| | : | **STATE A CLAIM [F.R.C.P.** |
| DOMAIN ADMIN/SITETOOLS, | : | **12((b)(6)] AND ISSUE** |
| INC., and PHILIP ANCEVSKI, | : | **PRECLUSION** |
| | : | |
| Defendants. | : | **Date:** December 4, 2020 |
| | : | **Time:** 9:30 a.m. |

**Location:** United States Courthouse,
350 West 1st Street, Los Angeles, CA, 90012, Courtroom 8C, 8th Floor
**Judge:** Honorable Dolly M. Gee

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 4, 2020, before the Honorable District Judge Dolly M. Gee in the above-referenced court, located at 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 8C, 8th Floor, at 9:30 a.m., or as soon thereafter as this matter may be heard, Defendants will move to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants' motion is based on this Notice and the Memorandum of Points and Authorities filed herewith, the files and records in this action, argument of counsel, and any other and further matter adduced at hearing or of which the court takes judicial notice.

## STATEMENT RE MEET & CONFER

Defendants' lead trial counsel has met and conferred with Plaintiff's lead trial counsel prior to filing this motion, via telephone conference on October 27, 2020, in accord with the court's rules.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.  INTRODUCTION & FACTUAL BACKGROUND**

Defendant brings this motion on the basis that Plaintiff's claim for cybersquatting under the Anti-cybersquatting Consumer Protection Act ("ACPA") is barred by the doctrine of collateral estoppel (issue preclusion) because the issue of bad faith has already been fully litigated and finally decided in the context of a UDRP decision, decided by a three-member panel after two rounds of briefing and evidence provided by Plaintiff's counsel.

The crux of Plaintiff's cybersquatting claim is stated in the first paragraph of the Complaint, alleging:

> [Defendants] have acted as cybersquatters by profiting from the goodwill associated with Plaintiff's marks and unfairly diverted consumers from Plaintiff's websites to Defendants' own website at "POCKETBOOK.COM" by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendants' website located at the Domain Name "POCKETBOOK.COM."

In the Fourth Cause of Action (paragraph No. 51), the salient allegation is stated meekly:

> Upon information and belief, Defendants have a bad faith intent to profit from the registration and use of the Domain Name (pocketbook.com) by creating an association with Pocketbook's famous Pocketbook Marks as to source or sponsorship.

However, that precise issue of Defendants' alleged bad faith – actually, conversely, of their affirmative <u>good</u> faith -- was already fully and expensively litigated before the three-member, expert arbitration panel, accredited by

ICANN to decide domain name cybersquatting disputes under the UDRP. Plaintiff specifically alleged therein:[1]

> Respondent attempts to sell the disputed domain name to Complainant for "six figures." Furthermore, the disputed domain name resolves to Respondent's website where it commercially benefits.
>
> Respondent registered and uses the **<pocketbook.com>** domain name in bad faith. Respondent acquired the disputed domain name with the intent to sell it for more than out-of-pocket costs. Furthermore, Respondent attempts to disrupt Complainant's business by preventing Complainant from reflecting its mark in a corresponding domain name. Respondent also attempts to attract, for commercial gain, users to the disputed domain name where Respondent advertises its own goods and services. Finally, Respondent had actual and constructive knowledge of Complainant's rights in the POCKETBOOK mark.

After two rounds of briefing and evidence, that unanimous, expert arbitration panel denied Plaintiff's complaint, holding that Defendants did not act in bad faith:

> This is a rather unusual UDRP case where Respondent has owned a corresponding trademark registration since 2012; the registration remains valid and apparently has not been subject to any challenge brought by Complainant (whether in court or before the trade mark office). Respondent acquired the domain name in 2010, nearly 10 years ago. The parties are engaged in different fields of business. Complainant's earliest trademark registration is subject to a disclaimer of the textual element "pocketbook". Respondent also argues that "pocketbook" has a descriptive meaning in relation to financial matters which mitigates or precludes any finding of bad faith. These are all factors which mitigate a finding of bad faith. In

---

[1] A true and correct copy of the UDRP decision is attached hereto as Exhibit A.

such circumstances, the Panel would require to see very clear evidence of bad faith on the part of Respondent if the Panel were to find in favor of Complainant.

Plaintiff's claim of bad faith under the UDRP is essentially the same as Plaintiff's claim of bad faith under the ACPA.  Plaintiff relies on the same bare allegations and scant evidence in both proceedings.  Conversely, Defendants' proved their affirmative good faith in the UDRP action, with the panel holding that Defendants have rights and legitimate interests in the domain name (and thus, are using it in good faith, in ACPA parlance):

> One key factor is that Respondent has rights in the POCKETBOOK.COM mark through its own trademark registration with the USPTO (*e.g.*, Reg. No. 4,099,793, registered Feb. 14, 2012). While the existence of a corresponding trademark registration does not automatically confer rights or legitimate interests on a respondent, it does require a complainant to show why the Panel should disregard a *prima facie* valid registration of the respondent (for example, where the evidence demonstrates that such trademark registration was obtained primarily to circumvent the application of the UDRP). In this case, Complainant falls short of showing such circumstances. To the contrary, the fact that Respondent's trademark was registered more than 7 years ago from the date of this Complaint suggests that at the time of registration of the trademark, Respondent could not have foreseen this UDRP complaint some 7 years later.

> Respondent claims to have legitimate interests in the **<pocketbook.com>** domain name. Specifically, Respondent argues to have made demonstrable preparations to use the domain name for a mortgage calculator and financing service. Furthermore, Respondent argues that the disputed domain name is comprised of the term "pocketbook," which relates to mortgage and financing services. The Panel notes that such use of the disputed domain name for a mortgage and financing services website appeared to commence in 2014 and the domain resolved to a pay-per-click website with links to finance related topics as early as December of

2011. This considerable time period of use supports Respondent's contention that it has legitimate interests in the mark "pocketbook" in relation to a *bona fide* offering of services.

Defendants therefore request that the Court dismiss, with prejudice, Plaintiff's Fourth Cause of Action brought under the ACPA.

## UDRP Procedural History

On August 13, 2019, Plaintiff, therein Complainant, submitted a uniform dispute resolution complaint ("UDRP Complaint") to the FORUM, which is accredited by ICANN to adjudicate UDRP complaints. Through counsel, Plaintiff claimed that Defendants, therein Respondent, had registered and used the <pocketbook.com> domain name in bad faith (the UDRP proceeding will be referred to, hereinafter, as the "UDRP Dispute"). On September 13, 2019, through counsel hired to defend Defendant's valuable domain name property, Defendant filed a timely response. On September 18, 2019, Plaintiff's counsel filed an additional submission. On September 23, 2019, Defendant's counsel filed an additional submission. Per the Plaintiff's election, the proceedings were decided by a three-member panel (the "Panel") of expert domain name dispute arbitrators. *See* Exhibit A.

On October 3, 2019, the Panel unanimously decided that Plaintiff failed to prove that Defendant lacked a right or legitimate interest in the Domain, and that Plaintiff failed to demonstrate that Defendant had registered or used the Domain in bad faith. Accordingly, the UDRP Dispute was terminated, and Defendant rightfully retained ownership of his valuable Domain property.

Nearly a year later, on September 22, 2020, Plaintiff brought this action alleging, among other things, that Defendants violated the ACPA when it registered and/or used the Domain.

//

## II.  ARGUMENT

### A.    <u>Issue Preclusion</u>

The doctrine of issue preclusion helps to protect against "'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019) (*quoting Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (alterations in original)).  In order to determine whether issue preclusion applies, the Ninth Circuit applies a four-pronged test: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (*quoting, Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012)).

Generally, courts recognize that administrative decisions can have a preclusive effect on federal litigation so long as the issue was "actually litigated".  *See Tranik Enterprises Inc. v. AuthenticWatches.com Inc.*, No. 2:16-CV-02931-SVW-JC, 2016 WL 11595066, at *4 (C.D. Cal. July 18, 2016) (stating that "administrative decisions from the USPTO Trademark Trial and Appeal Board ("TTAB") can have preclusive effect"), *citing, In re Cordua Restaurants, Inc.*, 2016 WL 2786364, at *4 n.2 (Fed. Cir. May 13, 2016); *see also, e.g. Alberto-Culver Co. v. Trevive, Inc.*, 199 F. Supp. 2d 1004, 1008 (C.D. Cal. 2002) (stating, "Collateral estoppel may also apply to the final decision of an administrative agency acting in a judicial capacity.")

Here, all of the elements of issue preclusion are met with regard to Plaintiff's claim for cybersquatting, and there is no question that the issue was

"actually litigated" before the three-member Panel in the UDRP arbitration proceeding.  Accordingly, Plaintiff's claim for cybersquatting is barred by issue preclusion.

### 1. Bad Faith Is Essentially the Same Under the UDRP and the ACPA.

A critical element in a UDRP proceeding is whether the owner of the domain name acted in bad faith when registering and/or using the domain name at issue.  *See* Exh. A:

> Paragraph 4(a) of the [UDRP] requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:
>
> (1) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and
> (2) Respondent has no rights or legitimate interests in respect of the domain name; and
> (3) the domain name has been registered and is being used in bad faith.

Similarly a party may only be liable under the ACPA if they "register[], traffic[] in, or use[] a domain name that" "in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark" and that such conduct was undertaken in bad faith.  15 U.S.C. § 1125(d)(1)(A)-(B); *see also*, Complaint, #1, 51.  In determining whether such conduct was undertaken in bad faith the court may consider nine bad faith factors enumerated in the statute, among any other factors the court finds relevant.[2]  15

---

[2] The bad faith factors are non-exhaustive, but include: (I)the trademark or other intellectual property rights of the person, if any, in the domain name; (II)the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;(III)the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV)the person's bona fide noncommercial or

U.S.C. § 1125(d)(1)(B).  Moreover, the ACPA provides an absolute, affirmative defense of "good faith":

> **(ii)**  Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

In both the UDRP and the ACPA, the central issue is whether the registrant of the domain name acted in bad faith.  Earlier this year, another district court found that the elements under the UDRP and the ACPA are "essentially the same" for purposes of issue preclusion. *Fuccillo v. Silver*, 2020 WL 5758001, at *4 (M.D. Fla. Sept. 28, 2020).  The court further elaborated, stating that "when a previously adjudicated claim requires the identification of elements that "closely mirror" the requirements of the present cause of action, the first element of issue preclusion has been met." *Id.*  Similarly, here, there is

---

fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

no question that the bad faith elements under the ACPA and UDRP are essentially the same. Accordingly, the issues are identical for the purposes of this analysis.

### 2. The Issue was Actually Litigated in the UDRP Proceeding

"Collateral estoppel next requires that the claim at issue be actually litigated and necessarily decided." *Silberstein v. Fox Entm't Grp., Inc.*, 2016 WL 5380928, at *2 (C.D. Cal. Feb. 1, 2016), *aff'd*, 732 F. App'x 517 (9th Cir. 2018). Courts can look to a number of factors in order to determine whether an issue was "actually litigated", including: "(1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal. *Id*.

In determining that issue preclusion barred plaintiff's claim for cybersquatting, the court in *Fuccillo* relied on the facts that (1) both parties were represented by counsel, (2) additional responses were solicited by the panel when complainant raised questions as to ownership of the domain, and (3) all parties submitted statements and documentation supporting their claims and defenses, when it held that the issue had been actually litigated in the UDRP proceeding. 2020 WL 5758001, at *5.

In the case at hand, the factors present in *Fuccillo* are more than satisfied, if not exceeded. To wit, (1) both parties were represented by counsel and their positions vigorously advocated, (2) the parties not only submitted the requisite pleadings (a complaint on the part of Plaintiff, and a response on the part of Defendant), but each party also submitted one additional submission, and (3) both parties submitted voluminous documentation supporting their claims and defenses, specifically Plaintiff submitted voluminous documentation. *See*

Exhibit A.  There is also no question that the decision was not tentative, and that the Panel provided a well-reasoned opinion supported by facts and evidence submitted by the parties.  *Id*.

And because numerous courts have found that arbitration or administrative proceedings can serve as a forum where issues may be "actually litigated" there is no question that this factor has been met in the instant proceeding.  *See e.g., Alberto-Culver Co. v. Trevive, Inc.*, 199 F. Supp. 2d 1004, 1009 (C.D. Cal. 2002) (finding there was "no real question" that the issue of likelihood of confusion was "actually litigated" during an opposition proceeding at the PTO).

Here, almost all of the nine bad faith factors were considered by the Panel.

***First***, Defendants provided evidence of prior use of the mark in connection with a bona fide offering of goods and services (third and fourth ACPA factors).  The Panel found that not only did Defendants own the Domain for at least 10 years prior to Plaintiff bringing the UDRP Complaint, but that Defendants also owned a corresponding trademark.  *See* Decision (stating, "This is a rather unusual UDRP case where Respondent has owned a corresponding trademark registration since 2012; the registration remains valid and apparently has not been subject to any challenge brought by Complainant (whether in court or before the trade mark office). Respondent acquired the domain name in 2010, nearly 10 years ago.").  The Panel also found that Defendants had used the mark in connection with a legitimate financial services website.  *Id*. (stating "The Panel notes that such use of the disputed domain name for a mortgage and financing services website appeared to commence in 2014 and the domain resolved to a pay-per-click website with links to finance related topics as early as December of 2011. This considerable time period of use supports

Respondent's contention that it has legitimate interests in the mark "pocketbook" in relation to a bona fide offering of services.").

*Second*, Plaintiff failed to demonstrate any intent on the part of Defendants to divert customers (fifth ACPA factor).  On this point, the Panel found that Defendants and Plaintiff operate in completely different fields of business.  *Id*.  ("The parties are engaged in different fields of business. Complainant's earliest trademark registration is subject to a disclaimer of the textual element "pocketbook". Respondent also argues that "pocketbook" has a descriptive meaning in relation to financial matters which mitigates or precludes any finding of bad faith. These are all factors which mitigate a finding of bad faith.").

*Third*, the Panel apparently found Plaintiff's assertions that Defendants attempted to sell the Domain to Plaintiff baseless and not warranting any serious discussion (sixth ACPA factor).  *Id*. (Plaintiff asserted that "[Defendants] attempts to sell the disputed domain name to Complainant for "six figures.").

*Fourth*, Plaintiff could not prove that Defendants provided false contact information (seventh ACPA factor). *Id*. ("On August 15, 2019, TurnCommerce, Inc. DBA NameBright.com confirmed by e-mail to the Forum that the <pocketbook.com> domain name is registered with TurnCommerce, Inc. DBA NameBright.com and that Respondent is the current registrant of the name.").

*Fifth and finally*, there is no evidence, nor does Plaintiff even allege, that Defendant acquired multiple domains that relate to Plaintiff or any other mark holder (eigth ACPA factor).

Accordingly, there can be no question that the bad faith and/or good faith issues were actually litigated within the context of the UDRP Proceeding.

### 3. There Was a Full and Fair Opportunity to Litigate the Issue

It is enough that the parties thoroughly litigate the issue, as described above. *Fuccillo v. Silver,* No. 8:18-CV-1236-T-36AEP, 2020 WL 5758001, at *6 (M.D. Fla. Sept. 28, 2020) ("The Court also finds persuasive Plaintiffs' argument that Silver's vigorous defense in the arbitration through counsel establishes that Silver was incentivized to litigate the issue in that proceeding. Doc. 62 at 8 (*citing, Arch Specialty Ins. Co. v. Gulfstream Crane LLC*, No. 12-61015, 2013 WL 1707910, at *3, 2013 U.S. Dist. LEXIS 56428, at *7-8 (S.D. Fla. Apr. 19, 2013)).");  *Alberto-Culver Co. v. Trevive, Inc.*, 199 F. Supp. 2d 1004, 1016 (C.D. Cal. 2002) (finding there was a full and fair opportunity to litigate the issue where "[t]he parties presented documentary evidence and stipulated trial testimony, filed legal briefs, and had oral argument before the Board.").

### 4. The Issue Was Necessary to Decide the Merits

Because the ACPA factors are merely a guideline and not an exhaustive or even required list, not all of the factors need to be present in order to make a determination as to bad faith or lack thereof. *E.g., Fuccillo*, 2020 WL 5758001, at *5 ("The … bad faith factors merely provide persuasive guidance and … a court need not determine the presence of all to find bad faith.").

Accordingly, it is clear that the Panel undertook a full and fair analysis of the issue of bad faith, ultimately finding that: (1) Defendants have a legitimate interest in the Domain ("This considerable time period of use supports Respondent's contention that it has legitimate interests in the mark "pocketbook" in relation to a bona fide offering of services."); (2) Defendants did not register or use the Domain in bad faith ("These are all factors which mitigate a finding of bad faith. In such circumstances, the Panel would require to see very clear

evidence of bad faith on the part of Respondent if the Panel were to find in favor of Complainant.").

The Panel concluded by stating that Plaintiff had fallen short of proving by a mere preponderance of the evidence that Defendants operated in bad faith, stating:

> This is a rather unusual UDRP case where Respondent has owned a corresponding trademark registration since 2012; the registration remains valid and apparently has not been subject to any challenge brought by Complainant (whether in court or before the trade mark office). Respondent acquired the domain name in 2010, nearly 10 years ago. The parties are engaged in different fields of business. Complainant's earliest trademark registration is subject to a disclaimer of the textual element "pocketbook". Respondent also argues that "pocketbook" has a descriptive meaning in relation to financial matters which mitigates or precludes any finding of bad faith. These are all factors which mitigate a finding of bad faith. In such circumstances, the Panel would require to see very clear evidence of bad faith on the part of Respondent if the Panel were to find in favor of Complainant.

Since there was no such evidence, clear or otherwise, despite Complainant's two briefs and factual submissions, the panel found no bad faith, and dismissed the UDRP Complaint.

Because that critical element of Plaintiff's ACPA claim was already fully litigated and decided against Plaintiff, they are barred from relitigating it in court now.   *E.g., Fuccillo*, 2020 WL 5758001, at *5.

//

//

//

//

## III.  CONCLUSION

For all of the foregoing reasons, Defendants request dismissal with prejudice of Plaintiff's Fourth Cause of Action under the ACPA.

LOZA & LOZA LLP

Dated:  October 30, 2020

By: _Mike Rodenbaugh_

Mike Rodenbaugh

*Attorneys for SiteTools, Inc. and Philip Ancevski*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

By: /s/ Marie Richmond
Marie E. Richmond (292962)