1  Michael L. Rodenbaugh (California Bar No. 179059)
   Marie E. Richmond (California Bar No. 292962)
2  LOZA & LOZA LLP
   305 N. Second Ave., #127
3  Upland, CA 91786

4  *Attorneys for SiteTools, Inc. and Philip Ancevski*

5

6

7                 **UNITED STATES DISTRICT COURT**

8               **CENTRAL DISTRICT OF CALIFORNIA**

9  POCKETBOOK INT'L SA,                :    Case No.: 2:20-CV-8708
                                       :
10           Plaintiff,                :
                                       :    **DEFENDANTS' OPPOSITION TO**
11         vs.                         :    **PLAINTIFF'S MOTION TO STRIKE**
                                       :    **COUNTERCLAIM PURSUANT TO**
12                                     :    **CCP 425.16, AND TO DISMISS**
   DOMAIN ADMIN/SITETOOLS, INC.,       :    **UNDER RULE 12(b)(6) OR TO**
13  and PHILIP ANCEVSKI,               :    **STRIKE THE CANCELLATION,**
                                       :    **REVERSE DOMAIN NAME**
14           Defendants,               :    **HIACKING, AND UNFAIR**
                                       :    **COMPEITTION COUTERCLAIMS**
15                                     :    **AND TO STRIKE AFFIRMATIVE**
   _____      :    **DEFENSES**
16                                     :
   *AND RELATED COUNTERCLAIMS.*         :
17                                     :    **Date:** June 18, 2021
                                       :    **Time:** 9:30 a.m.
18                                     :    **Location:** 8C
   _____
19

20

21

22

23

24

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 7

II.   RELEVANT FACTS ...................................................................................... 8

III.  ARGUMENT ................................................................................................. 9

    A.   PLAINTIFF'S MOTION TO STRIKE FAILS BECAUSE A UDRP IS NOT A JUDICIAL ACTION, AND DEFENDANTS' COUNTERCLAIMS HAVE MERIT ................................................................ 9

       1.   Anti-SLAPP Statute is Not Applicable to UDRP Complaints ................................. 9

       2.   California's Litigation Privilege is Entirely Inapplicable ..................................... 12

       3.   The Noerr-Pennington Doctrine is Entirely Inapplicable ..................................... 13

    B.   DEFENDANTS HAVE PROPERLY PLEADED CLAIMS FOR CANCELLATION BASED ON ABANDONMENT, REVERSE DOMAIN NAME HIJACKING, AND UNFAIR COMPETITION .......... 14

       1.   Legal Standard ........................................................................................... 15

          a)   Motion to Dismiss ............................................................................... 15

          b)   Motion to Strike ................................................................................. 16

       2.   Defendants Properly Plead a Cause of Action for Trademark Cancellation Based on Abandonment ....................................................................................................... 16

       3.   Defendants' Properly Plead a Cause of Action for Reverse Domain Name Hijacking Pursuant to 15 U.S.C. § 1114(2)(D) ................................................................ 18

    C.   PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' THIRD CAUSE OF ACTION FOR UNFAIR COMPETITION MUST BE DENIED ............................................................................ 19

    D.   PLAINTIFF'S MOTION TO STRIKE REFERENCES TO THE UDRP MUST BE DENIED ....... 20

    E.   PLAINTIFF'S MOTION TO STRIKE CAUSES OF ACTION MUST BE DENIED .................... 20

    F.   PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES SHOULD BE DENIED ....... 21

       1.   Failure to Police ........................................................................................... 21

       2.   Laches; Waiver; Consent/Ratification/Acquiescence ............................................ 21

3.    *Unclean Hands*................................................................22

4.    *Failure To Mitigate Damages*................................................22

5.    *Good Faith; Innocent Intent*................................................22

6.    *Failure To State A Claim; Lack of Damages; Unjust Enrichment; Frivolous Claims; Right to Amend* ................................................22

**IV.  CONCLUSION**................................................................**23**

1
2

## <u>TABLE OF AUTHORITIES</u>

3

<u>Cases</u>

4
5
*Abdul-Jabbar v. Gen. Motors Corp.*,
 85 F.3d 407 (9th Cir. 1996) ................................................................................ 18

6
*Aevoe Corp.*,
 2012 WL 13069926 (N.D. Cal. Apr. 6, 2012) ................................................... 12

7
8
*AIRFX.com v. AirFX LLC*,
 2011 WL 5007919 (D. Ariz. Oct. 20, 2011) ............................................... 11, 20

9
10
*Antablin v. Motion Picture Costumers, Loc. No. 705*,
 812 F. App'x 533 (9th Cir. 2020) .............................................................. 16, 17

11
*Ashcroft v. Iqbal*,
 129 S.Ct. 1937 (2009) ....................................................................................... 17

12
13
*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*,
 330 F.3d 617 (4th Cir. 2003) .............................................................. 11, 12, 20, 21

14
15
*Barrilleaux v. Mendocino County*,
 2016 WL 1298860 (N.D. Cal. 2016) .................................................................. 23

16
*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) .......................................................................................... 17

17
18
*California Brewing Company v. 3 Daughters Brewing LLC*,
 2016 WL 4001133 (E.D. Cal. 2016) .................................................................. 23

19
20
*Clearly Food & Beverage Co.*,
 102 F. Supp. 3d (W.D. Wash. 2015) .................................................................. 18

21
*Color Me Mine Enterprises, Inc. v. S. States Mktg., Inc.*,
 No. CV1200860RGKJCX, 2012 WL 12888693 (C.D. Cal. July 25, 2012) ...... 17

22
23
*Del Monte Int'l GmbH v. Del Monte Corp.*,
 995 F. Supp. 2d 1107 (C.D. Cal. 2014) .............................................................. 21

24
25
*E.D.C. Techs., Inc. v. Seidel*,
 225 F. Supp. 3d 1058, 1066 (N.D. Cal. 2016) ................................................... 14

26
*Electro Source, LLC*,
 458 F.3d (9th Cir. 2006) .................................................................................... 18

*Eurotech Inc. v.* Cosmos European Travels Aktiengesellschaft,
      189 F.Supp.2d 385 (E.D.Va. 2002) ................................................................. 15

*Foman v. Davis*,
      371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) .......................... 16

*Formula One Licensing v. Purple Interactive*,
      No. C 00-2222 MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) .............................. 15

*Hall v. City of Santa Barbara*,
      833 F.2d 1270 (9th Cir. 1986)....................................................................... 16

*Gilligan v. Jamco Dev. Corp.*,
      108 F.3d 246 (9th Cir. 1997)......................................................................... 16

*Hawes v. Network Sols., Inc.*,
      337 F.3d 377 (4th Cir. 2003) ................................................................. 11, 20, 21

*Herb Reed Enterprises, LLC*,
      736 F.3d 1239 (9th Cir.2013)....................................................................... 18

*Interstellar Star Services, Ltd. v. Epix, Inc.*,
      304 F.3d 936 (9th Cir. 2002)........................................................................ 25

*LeDuc v. Kentucky Cent. Life Ins. Co.*,
      814 F. Supp. 820 (N.D. Cal. 1992) ................................................................ 17

*Marketquest Grp., Inc. v. BIC Corp.*,
      316 F. Supp. 3d 1234 (S.D. Cal. 2018) ........................................................... 18

*Marketquest Grp., Inc.*,
      316 F. Supp. 3d at 1282 ............................................................................... 18

*Moore v. Conliffe*,
      7 Cal. 4th 634, 871 P.2d 204 (1994) .............................................................. 14

*NL Industries, Inc. v. Kaplan*,
      792 F.2d 896 (9th Cir. 1986)......................................................................... 16

*Peloza v. Capistrano Unified School Dist.*,
      37 F.3d 517 (9th Cir. 1994).......................................................................... 16

*People ex. rel. Gallegos v. Pac. Lumber Co.*,
      70 Cal. Rptr. 3d 501 (Cal. Ct. App. 2008) ...................................................... 14

*Ricks v. BMEzine.com*, LLC,
      727 F. Supp. 2d 936 (D. Nev. 2010) .............................................................. 21

*Sallen v. Corinthians Licenciamentos LTDA,*
   273 F.3d 14 (1st Cir. 2001) ............................................................... 10

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir.) ..................................................................... 16

*Strong College Students Moving Inc. v. College Hunks Hauling Junk Franchising LLC,*
   2015 WL 12602438 (D. Ariz. 2015) ................................................. 21

*U.S. v. City of Redwood City,*
   640 F.2d 963 (9th Cir. 1981) ........................................................... 16

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
   758 F.3d 1069 (9th Cir. 2014), *as amended* (Mar. 11, 2014) ........... 18

<u>Statutes</u>

Cal. Code Civ. P. § 425.16(e) ............................................................ 10

Cal. Bus. & Prof. Code §17200 ........................................................... 11

15 U.S. Code § 1114(2)(D)(iv) ............................................................ 11

15 U.S.C. § 1114(2)(D)(i)(II)(V) ........................................................ 20

15 U.S.C.A. § 1127 (West) ................................................................. 18

## **MEMORANDUM OF POINTS AND AUTHORITIES**

By and through their attorney of record Defendants/Counter-Claimants, Domain Admin/SiteTools, Inc. (herein "SiteTools"), and Philip Ancevski (herein "Ancevski", collectively "Defendants") hereby oppose Plaintiff/Counter-Defendant Pocketbook Intl. SA's (herein "Plaintiff") motion to: (1) strike Defendants' claim for unfair competition pursuant to CCP 425.16; (2) dismiss under Rule 12(b)(6) or strike under Rule 12(f), Defendants' claims for abandonment and reverse domain name hijacking; (3) strike references to a UDRP proceeding; (4) dismiss Defendants' claim for unfair competition; and (5) strike Defendants' affirmative defenses (the "Motion").

## **I. INTRODUCTION**

This case arises from Plaintiff's effort to bully Defendants into selling their lawfully registered and valuable domain name property <pocketbook.com>, which Defendant SiteTools has legitimately owned and used for over a decade. Plaintiff's claims for trademark infringement, cybersquatting, and unfair competition each are centered on its alleged ownership of pleaded registrations for the POCKETBOOK trademark. However, Plaintiff has abandoned rights in such marks because it failed to use them in U.S. commerce from at least 2012 through 2018, rendering Plaintiff's registrations subject to cancellation by this Court. And rendering Plaintiff's trademark infringement claims meritless.

Then in 2019, Plaintiff made knowing and material misstatements in its UDRP complaint, intentionally causing Defendants' domain name to be suspended, causing Defendant to hire counsel and pay fees to The Forum for a three-person UDRP panel, and demanding in bad faith to win transfer of Defendants' valuable property. Plaintiff's statements were not made in context of a judicial or other official proceeding, and such misstatements are prohibited by federal law and therefore cannot be privileged. That behavior constitutes reverse domain name hijacking under the Anti-cybersquatting Consumer Protection Act – not free speech.

That is illegal and unfair activity that is predicate for Defendants' unfair competition claim under California law.

## II.  RELEVANT FACTS

Defendant SiteTools, Inc. acquired the <pocketbook.com> domain name (the "Domain") in 2010.  *See* ECF No. 25 (hereinafter, "Counterclaim"), p.13.  Defendants have continually and lawfully used the Domain since then.  The Domain currently redirects to a website (the "Website") that provides financial tools and information to users, and discusses a Pocketbook® application that was developed to help users manage and share their financial goals.  *Id*.  Defendant SiteTools also owns the trademark registration for POCKETBOOK.COM, U.S. Reg. No. 4,099,793, which was first used in commerce at least as early as December 2010.  Counterclaim, p.14.

**Plaintiff's Attempt to Purchase the Domain**

On or about July 26, 2017, a representative of Plaintiff contacted Defendants offering to purchase the Domain for $5,000, an offer that Defendants refused.  *Id.*, p.15.  After an insulting attempt by Plaintiff to negotiate a price, Defendants informed Plaintiff that the domain was not for sale. *Id.*

**UDRP Proceeding**

Over two years later in 2019, Plaintiff submitted a complaint to The Forum (a private arbitration provider located in Minnesota) alleging that Defendants violated ICANN's the Uniform Dispute Resolution Policy ("UDRP") incorporated into Defendant SiteTools' contract with a domain name registrar.  *Id.*  In that UDRP complaint, Plaintiff made several material misrepresentations enumerated in Defendants' Counterclaims.  Counterclaim, pp.15-16.  Plaintiff demanded that The Forum transfer Defendant SiteTools' valuable property to Plaintiff, alleging specifically that Defendant had no legitimate interest in the Domain and had registered and used the Domain in bad faith.  *Id*., pp.15-16.  As an intentional and direct result

of Plaintiff filing the UDRP complaint, the registrar for the Domain suspended the Domain registration.  *Id.*, p.16.

On October 3, 2019, the UDRP panel unanimously decided that Defendant SiteTools proved its legitimate interest in the Domain, and that Plaintiff did not come close to proving that Defendant had registered or used the Domain in bad faith.  *Id.*, pp.16-17.  Accordingly, the UDRP proceeding was terminated, and Defendant SiteTools rightfully retained ownership of its valuable Domain property.  *Id.*

Nearly a year later, on September 22, 2020, Plaintiff brought this action alleging, among other things, that Defendants infringed Plaintiff's POCKETBOOK trademark and violated the ACPA when they registered and/or used the Domain.

**Third Party Use of the POCKETBOOK Mark**

There is a large number of third parties that have registered and use POCKETBOOK-formative marks in association with their business and/or in their associated domain names, in the US and worldwide, across myriad industries -- and Plaintiff has failed to take any action to police such use.  Counterclaim, p.17.  This also demonstrates Defendants' good faith use of the Domain property, indicating the inherent value of the Domain as a rare 'dictionary word' .com domain that is potentially valuable to myriad businesses anywhere in the world.

Defendants hereby incorporate the facts and other statements pleaded in their Counterclaim.  *See* Counterclaim, pp.12-19.

**III.   ARGUMENT**

**A.   Plaintiff's Motion to Strike Fails Because a UDRP is Not A Judicial Action, and Defendants' Counterclaims Have Merit**

**1.   Anti-SLAPP Statute is Not Applicable to UDRP Complaints**

California's Anti-SLAPP law **only applies** in instances 'in connection with a public issue'**, which** includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any

written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law**.**  Cal. Code Civ. P. § 425.16(e**)**.  However, a UDRP proceeding is **<u>none</u>** of these things, even if the statute is construed broadly.

This Court already has recognized that the UDRP merely "contractually empower[s]" administrative dispute resolution panels to adjudicate domain name disputes under the UDRP, while permitting "independent" judicial resolution of the same disputes. ECF No. 23, p.5 (*citing Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 18 (1st Cir. 2001)).  Defendants are <u>not</u> complaining about Plaintiff's statements made in this lawsuit, as were the allegations at issue in the *Aevoe* decision.  So that decision is entirely inapposite. Plaintiff does not cite a single case holding statements in a UDRP complaint to be "judicial" or "official" within the meaning of this statute.  The UDRP was not enacted by any statute, is not law, and is not a judicial or official proceeding.

Defendants only are counterclaiming about statements made by Plaintiff in its UDRP complaint, that Plaintiff filed with a private ADR provider in Minnesota.  By filing its complaint, Plaintiff knew the Domain would be suspended because the UDRP says it will. Because a UDRP complaint causes the immediate suspension of title to the subject domain name property, the ACPA specifically makes material misstatements in such a complaint illegal under federal law -- actionable as reverse domain name hijacking ("RDNH").  15 U.S. Code § 1114(2)(D)(iv).  Defendants specifically enumerate the alleged material and knowing misstatements in their Counterclaim.  Counterclaim, pp.15-16.

Furthermore, California's Unfair Competition Law ("UCL") makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.  The ACPA "creates a cause of action for reverse domain name hijacking against trademark owners who misuse or abuse their rights in bringing a cybersquatting action." *E.g., Hawes v. Network Sols., Inc.*, 337 F.3d 377, 383 (4th Cir. 2003) (stating that the ACPA "creates a cause of action

for reverse domain name hijacking against trademark owners who misuse or abuse their rights in bringing a cybersquatting action."); *AIRFX.com v. AirFX LLC*, 2011 WL 5007919, at *2 (D. Ariz. Oct. 20, 2011) (stating, ""if a trademark owner 'overreaches' when exercising his ACPA rights, he 'reverse hijacks' the domain name from the person who registered it."); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003) (stating, "the ACPA also provides some protection to domain name registrants against "overreaching trademark owners.").

As a violation of federal law, RDNH is an unlawful and unfair business practice under California law. The UCL confers standing upon a "person who has suffered injury in fact and has lost money or property as a result of a violation." *Id*, §17204. Defendants have pled various acts and knowing misstatements amounting to RDNH, and causing injury in fact -- specifically the effective disablement of their Domain property, UDRP attorney's fees and panel expenses, and ongoing cloud on title to the valuable property.

Therefore, Defendants have pled a meritorious unfair competition claim under California law. Plaintiff has not come close to establishing by a "reasonable probability" that the Plaintiff will prevail on these claims. Defendants' claims at least have "minimal merit" to withstand the special motion for strike. *See, e.g., Aevoe Corp.,* 2012 WL 13069926, at *6 (N.D. Cal. Apr. 6, 2012):

> Moreover, where a party "can show a probability of prevailing on any part of its claim, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure.... [O]nce a [party] shows a probability of prevailing on any part of its claim, [that party] has established that its cause of action has some merit and the entire cause of action stands."

*Id.* (citing cases).

Defendants are likely to succeed on the merits of their claims for RDNH and unfair competition, as further discussed *infra* in context of Plaintiff's motion to dismiss those claims.

A claim for reverse domain name hijacking ("RDNH") requires the domain owner to prove four elements: (1) claimant is a domain name registrant; (2) claimant's domain name was suspended, disabled, or transferred under the UDRP; (3) the trademark owner prompting the domain name to be transferred has notice of the action; and (4) claimant's use or registration of the domain name is not unlawful. *E.g., Barcelona.com, Inc.*, 330 F.3d at 626 . At minimum, it is clear that the Domain property was suspended as a result of Plaintiff's UDRP complaint.  That is one element of the RDNH claim that is effectively proved, and therefore the entire cause of action stands.

Moreover, Defendants' registration use of the Domain property is presumptively lawful, given Defendant SiteTools' federal trademark registration of the matching POCKETBOOK.COM trademark, and the Defendant SiteTools' evident use in commerce of the mark for services unrelated to Plaintiff for almost a decade before Plaintiff complained. That legitimate, unrelated use of the trademark and Domain property continues today.  So this is another element that Defendants' have effectively proved, such that this claim cannot be stricken.

Moreover, Plaintiff made bad faith cybersquatting allegations in the UDRP, including many material and knowing misstatements about Plaintiff's alleged rights, as specifically alleged in Defendants' Counterclaim.  Counterclaim, pp.15-16.  Defendants allege and will prove that the Plaintiff's UDRP complaint was filed only as a bad faith negotiating tactic, attempting to gain property through the UDRP which Plaintiff wanted to buy from Defendant – though only at whatever price Plaintiff deems reasonable.  The UDRP panel unanimously recognized the obvious, critical weaknesses in Plaintiff's cybersquatting case. – that Defendants have legitimate interest in the Domain, and did not register or use it in bad faith. Now, Defendants request this Court to recognize that the ACPA prohibits Plaintiff's bad faith behavior and knowing misstatements, which constitute reverse domain name hijacking.

**2.   California's Litigation Privilege is Entirely Inapplicable**

As Plaintiff states in its Motion, the California litigation privilege "protects participants in judicial proceedings from derivative tort actions based on communications in or *regarding the judicial proceeding*. *E.D.C. Techs., Inc. v. Seidel*, 225 F. Supp. 3d 1058, 1066 (N.D. Cal. 2016) (emphasis added) (*quoting, eCash Techs., Inc. v. Guagliardo*, 127 F.Supp.2d 1069, 1082 (C.D. Cal. 2000), *aff'd*, 35 Fed.Appx. 498 (9th Cir. 2002). It is clear that a UDRP proceeding is not a judicial proceeding. So, Plaintiff incorrectly argues that the litigation privilege should apply to the UDRP proceeding because it "applies to private contractual arbitration, such as the UDRP." Motion, p.5. However, Plaintiff also fails to support a single case for that proposition.

The sole, nearly 30-year-old case on which Plaintiff relies to support its contention that a UDRP is akin to a "private contractual proceeding" is a very far reach. The Court in *Moore* merely stated – six years before the UDRP was adopted -- that the litigation privilege "applies to statements made in the course of a private, contractual arbitration proceeding". *Moore v. Conliffe*, 7 Cal. 4th 634, 871 P.2d 204 (1994). The UDRP was not intended to fall within that rule as it did not exist. Plaintiff fails to cite a single decision finding statements in a UDRP complaint to be protected by the litigation privilege, whether or not they also form the basis for a meritorious RDNH claim. This Court has already held that the UDRP is not litigation. The Plaintiff's UDRP complaint is central to Defendants' counterclaims. Therefore, there can be no litigation privilege protecting the Plaintiff's own statements in their UDRP complaint.

### 3. The *Noerr-Pennington* Doctrine is Entirely Inapplicable

Plaintiff states that "[t]he Noerr--Pennington doctrine has been extended to preclude virtually all civil liability for a defendant's petitioning activities before not just courts, but also before administrative and other governmental agencies." *People ex. rel. Gallegos v. Pac. Lumber Co.*, 70 Cal. Rptr. 3d 501, 513 (Cal. Ct. App. 2008). Again, a UDRP is none of these

things. The Forum is a private ADR provider in Minnesota, it is not a government agency. UDRP panelists are not judges appointed by any government or official agency.

Plaintiff relies on two inapposite decisions from 20 years ago, each for the proposition that this doctrine bars Defendants' counterclaims. The *Eurotech* decision discusses WIPO, which is a UN-chartered organization deemed "quasi-public". *Eurotech Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp.2d 385, 393 (E.D.Va. 2002). It did not address The Forum, a private company in Minnesota. It also addressed tort claims that are not at issue here, it did not discuss RDNH. Anyway, it was criticized and decidedly not followed just a year later in the same district:

> The Court declines NICO's urging to convert the dicta in **Eurotech** into a firm legal precept. The analysis begins with the remembrance that the <u>Noerr–Pennington</u> doctrine is constitutional in nature, having been developed to avoid a possible conflict between the First Amendment and the Sherman Act. *Noerr,* <u>365 U.S. at 137–38, 81 S.Ct. 523.</u> The constitutional section at issue provides that "Congress shall make no law ... abridging the right of the people ... to petition the Government for a redress of grievances." <u>U.S. Constitution, Amendment I</u>. That text is clear, and it concerns petitioning the Government for redress of grievances. That plain text provides the answer to the issue presented here.

Further, the *Formula One* decision that Plaintiff relies upon dismissed an unfair competition claim because it was derivative of claimant's anti-trust claim, which was deficiently pled. *Formula One Licensing v. Purple Interactive*, No. C 00-2222 MMC, 2001 WL 34792530, at *4 (N.D. Cal. Feb. 6, 2001). Here, Defendant has properly pleaded a claim for RDNH and that is sufficient predicate for the unfair competition claim. Those claims are not barred by Plaintiff (a foreign corporation)'s alleged constitutional right to redress the U.S. government.

**B.** **Defendants Have Properly Pleaded Claims for Cancellation Based on Abandonment, Reverse Domain Name Hijacking, and Unfair Competition**

Plaintiff moves alternatively to dismiss and/or to strike all three of Defendants' counterclaims. However, each of the claims is properly stated and cannot be dismissed; or alternatively, Defendants should be given leave to amend in light of the Court's findings. *E.g.,*

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) (stating, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires' . . ."); *Antablin v. Motion Picture Costumers*, *Loc. No. 705,* 812 F. App'x 533, 534 (9th Cir. 2020) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.").

### 1.   Legal Standard

#### a)  Motion to Dismiss

It is axiomatic that a Rule 12(b)(6) motion to dismiss is viewed with disfavor and granted only in extraordinary circumstances.  *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court also must assume that all general allegations embrace whatever specific facts might be necessary to support them.  *E.g.*, *Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

To survive a motion to dismiss, the Supreme Court has held that a party need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007).  That is, a party need only to "nudge[] their claims across the line from conceivable to plausible."  *Id.*  And plausibility does not equate to probability.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  By their Counterclaim, Defendants have clearly met this low burden, with detailed allegations about Plaintiff's intentional abandonment of its mark in the US, and the knowing misstatements made by Plaintiff in its UDRP complaint.  Yet, if there is any deficiency, then Defendants should be allowed leave to amend and cure the same.  *E.g., Antablin,* 812 F. App'x at 534.

### b) Motion to Strike

Much like motions to dismiss, motions to strike are "disfavored." *Color Me Mine Enterprises, Inc. v. S. States Mktg., Inc.*, No. CV1200860RGKJCX, 2012 WL 12888693, at *1 (C.D. Cal. July 25, 2012). Rule 12(f) of the Federal Rules of Civil Procedure states that a district court may strike from a pleading an insufficient defense or any "redundant, immaterial, impertinent, or scandalous matter." *Id*. In deciding whether the material in question should be stricken, "the court must view the pleadings in the light most favorable to the pleader." *Id*. As such, a motion to strike will not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). By their Counterclaim, Defendants have clearly met this low burden; yet if there is any deficiency, then Defendants should be allowed leave to amend and cure the same.

### 2. Defendants Properly Plead a Cause of Action for Trademark Cancellation Based on Abandonment

Pursuant to Section 1127 of the Lanham Act, a trademark is considered abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C.A. § 1127 (West); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014), *as amended* (Mar. 11, 2014) (*quoting Electro Source, LL v. Brandess–Kalt—Aetna Grp., Inc.*, 458 F.3d 931, 935 (9th Cir. 2006)). A party claiming that a mark has been abandoned must prove: "(1) discontinuance of trademark use and (2) intent not to resume such use". *Electro Source, LLC*, 458 F.3d at 935 (9th Cir. 2006). A *prima facie* case for abandonment is presented where claimant can demonstrate three consecutive years of non-use by the mark owner. 15 U.S.C.A. § 1127 (West); *Herb Reed Enterprises, LLC*, 736 F.3d 1239, 1247–48 (9th Cir.2013); *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1282 (S.D. Cal. 2018). At such point, claimant creates "a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use." *Marketquest Grp., Inc.*, 316 F.

Supp. 3d at 1282; *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 411 (9th Cir. 1996); *Clearly Food & Beverage Co.*, 102 F. Supp. 3d at 1161–62 (W.D. Wash. 2015).  The mark owner may rebut the presumption of abandonment by showing valid reasons for non-use or lack of intent to abandon.  *Id.*

Given the procedural posture of the instant action, any reasonable reading of Defendants' first cause of action, which is clearly titled "Cancellation of Trademark Registration – Abandonment" (emphasis added) shows that Defendants' counterclaim for cancellation of Plaintiff's Marks is premised on a claim of abandonment.  *See* Counterclaim, pp.17-18 ("Plaintiff's U.S. Registration Nos. 4,820,128 and 3,675,976 3,675,976, should be cancelled on the basis of abandonment.").

In support of their counterclaim, Defendants' allege that "Plaintiff failed to use Plaintiff's Marks in U.S. Commerce from at least 2012 through 2018" (*Id.*), which constitutes a *prima facie* case for abandonment when such facts are properly construed in a light most favorable to Defendants.  Defendants further allege that "Plaintiff did not intend to resume use in U.S. commerce" (*id.*), thus properly pleading both prongs of an abandonment claim.

Defendants' knowledge at this stage in the proceeding is limited to facts and evidence within Defendants' possession and control. Still, Defendants are informed and believe that Plaintiff did not conduct business in US commerce for at least six years from 2012-2018 (or 2019), and there is ample evidence to prove that Plaintiff did not intend to resume use. Defendants also plead that in the 11 years that SiteTools has owned and used the Domain, Plaintiff never sent SiteTools a "cease and desist" letter, let alone took any other steps to enforce its mark against Defendants or anyone else.  Defendants aver that the first enforcement undertaken by Plaintiff regarding its purportedly famous mark was the UDRP, which was filed in bad faith in August 2019.  At that point, Defendant SiteTools had owned and used the Domain Name legitimately for some nine years!  Additionally, Defendants allege that there are a large number of third-parties that have registered and used POCKETBOOK-formative

marks in association with their business and/or in their associated domain names in myriad industries, which again supports a claim for abandonment. *See* Counterclaim, p.17. As all facts are construed in favor of Defendants, it would be improper to dismiss Defendants' First Cause of Action for Trademark Cancellation.

Finally, it is ironic that Plaintiff claims that cancellation is not an independent cause of action, but rather a remedy. Plaintiff makes the exact same claim in its Complaint. *See* ECF No. 1, pp13-14 ("Cancellation of the U.S. Registration No.: 4,099,793 (15 U.S.C. §§1064 and 1119)"). For the foregoing reasons, Plaintiff's motion to dismiss this claim should be denied with prejudice.

### 3. Defendants' Properly Plead a Cause of Action for Reverse Domain Name Hijacking Pursuant to 15 U.S.C. § 1114(2)(D)

The ACPA "creates a cause of action for reverse domain name hijacking against trademark owners who misuse or abuse their rights in bringing a cybersquatting action." *E.g., Hawes*, 337 F.3d at 383 ; 15 U.S.C. § 1114(2)(D)(i)(II)(V). Accordingly, "if a trademark owner 'overreaches' when exercising his ACPA rights, he 'reverse hijacks' the domain name from the person who registered it." *E.g., AIRFX.com*, 2011 WL 5007919, at *2. A claim for reverse domain name hijacking ("RDNH") requires the domain owner to prove four elements: (1) claimant is a domain name registrant; (2) claimant's domain name was suspended, disabled, or transferred under the UDRP; (3) the trademark owner prompting the domain name to be transferred has notice of the action; and (4) claimant's use or registration of the domain name is not unlawful. *E.g., Barcelona.com, Inc.*, 330 F.3d at 626.

The facts giving rise to Defendants' claim for RDNH have been alleged not only by Defendants, but by Plaintiffs as well. *First*, Plaintiff alleges that Defendants' are the owners of the Domain Name. *Second*, Defendants allege that the Domain Name was at least suspended for the pendency of the UDRP, and Plaintiff does not dispute this fact. (If not for Defendant prevailing therein, the Domain could have been transferred to Plaintiff.) *Third*,

Plaintiff has notice of the instant action. *Fourth*, Defendants allege that their use of the Domain is lawful. Plaintiff admits that Defendant SiteTools owns a registered trademark for POCKETBOOK.COM. Defendant SiteTools has declared before the USPTO that it has used the mark in commerce since at least 2010, and cites to its current legitimate use. *See e.g.*, Counterclaim, pp. 13-14.

Plaintiff argues that there is no independent cause of action for RDNH. *See* Motion, p.11. However, a cursory review of the relevant caselaw demonstrates that courts recognize an independent cause of action for RDNH. *See, e.g, Del Monte Int'l GmbH v. Del Monte Corp.*, 995 F. Supp. 2d 1107, 1122 (C.D. Cal. 2014), *vacated and remanded sub nom.*, *Del Monte Int'l GMBH v. Del Monte Foods, Inc.*, 658 F. App'x 846 (9th Cir. 2016) (stating "15 U.S.C. § 1114(2)(D)(v), on the other hand, provides a cause of action for reverse domain name hijacking."); *Strong College Students Moving Inc. v. College Hunks Hauling Junk Franchising LLC*, 2015 WL 12602438, at *8 (D. Ariz. 2015); *AIRFX.com v. AirFX LLC*, 2011 WL 5007919, at *2 (D. Ariz. Oct. 20, 2011); *Ricks v. BMEzine.com*, LLC, 727 F. Supp. 2d 936, 952 (D. Nev. 2010); *Hawes*, 337 F.3d at 383; *Barcelona.com*, 330 F.3d at 626

Plaintiff intimates that a RDNH claim might be valid, but is not ripe in this instance because the Domain is not currently suspended, disabled, or transferred. True, the Defendant's registrar lifted the suspension required by ICANN, after it was notified by The Forum that Plaintiff's UDRP complaint was denied. However, the statute does not require that the suspension still be in place; indeed, then there would never be a viable RDNH claim arising from a losing UDRP complaint, which would be the <u>opposite</u> of what the law intends. Dismissal would fly in the face of both the letter and spirit of the law, which is intended to curtail bad faith UDRP complaints by imposing liability for knowingly making misstatements within them. Defendants have properly pled those misstatements, with particularity.

**C.**     **Plaintiff's Motion to Dismiss Defendants' Third Cause of Action for Unfair Competition Must Be Denied**

This motion must be denied for the same reasons that Plaintiff's motion to strike this cause of action must also be denied, discussed *supra*.  Defendants properly state an RDNH claim, which is sufficient predicate to support an unlawful and unfair competition claim under California law.

**D.    Plaintiff's Motion to Strike References to the UDRP Must Be Denied**

Again, the standard for a motion to strike requires that the moving party demonstrate that the material in question is "redundant, immaterial, impertinent, or scandalous matter."  Here, Plaintiff does not argue that references to the UDRP proceeding and ruling fall into any of these categories.  Indeed, the Plaintiff's own UDRP complaint forms the basis for Defendant's counterclaims.  To the extent it is prejudicial to Plaintiff, all such prejudice is justified because it is caused by Plaintiff's own words.

Plaintiff all but admits that such information is relevant, but argues rather that it should be precluded because there is a "tremendous risk of confusion and prejudice".  However, it is unlikely that anyone would be confused between a federal court proceeding and a UDRP proceeding.  The UDRP decision itself is all of three pages long, so it seems overblown to characterize the risk of confusion and prejudice as "tremendous".  And in any event, the facts and arguments leading to the decision are critical to Defendants' counterclaims.

While the decision may not be binding in this Court, the arguments, evidence and the decision remain highly relevant to Defendants' counterclaims.  Any prejudice to Plaintiff is far outweighed by Defendants' need to prove how Plaintiff's action of filing the UDRP complaint in bad faith, and its knowing and material misstatements made therein, directly caused damages to Defendants which are recoverable pursuant to the clear language and intent of the RDNH law.  To strike all references to the UDRP would be equivalent to striking Defendants' RDNH counterclaim.  As that claim is properly pled, it must not be stricken.

**E.    Plaintiff's Motion to Strike Causes of Action Must Be Denied**

It is unclear why Plaintiff moves alternatively to dismiss or strike Defendants' counterclaims.  Plaintiff provides no argument to support its baseless contention that Defendants' claims should be stricken.  Plaintiff does not even argue that such claims amounts to "redundant, immaterial, impertinent, or scandalous matter".  Plaintiff's motion to strike is frivolous and should be denied with prejudice.

### F.  Plaintiff's Motion to Strike Affirmative Defenses Should Be Denied

The Ninth Circuit has held that, "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Barrilleaux v. Mendocino County,* 2016 WL 1298860, at *1 (N.D. Cal. 2016).  "Although fair notice is a low bar that does not require great detail, it does require a defendant to provide some factual basis for its affirmative defenses."  *California Brewing Company v. 3 Daughters Brewing LLC,* 2016 WL 4001133, at *1 (E.D. Cal. 2016).

#### 1.  Failure to Police

Defendants' plead enough facts to make a defense for failure to police "plausible" at this stage, including facts indicating that Plaintiff did not contact Defendants to allege any infringement  until 2019, two full years after Plaintiff had tried to buy the valuable property from Defendants (without raising any such infringement claim).  Defendant need not meet a "high burden of proof" at this stage as alleged by Plaintiff.  Accordingly, Plaintiff's motion to strike Defendants' First Affirmative Defense should be denied.

#### 2.  Laches; Waiver; Consent/Ratification/Acquiescence

Defendants pleaded facts to support their public use and registration of the Domain dating back to at least as early as 2010.  Plaintiff knew of Defendants' ownership interest in the mark since at least as early as 2017 when it tried to buy the Domain, and likely since long prior.  Yet, Plaintiff sat on its hands and did not allege infringement until 2019.  All that time, Defendants relied upon Plaintiff's silence, acquiescence, and/or waiver -- which prejudiced Defendants by giving them a false sense of security in investing effort and expense towards

the Website and Domain property.  Plaintiff is surely on notice of Defendants' plausible basis for these defenses.  Accordingly, Plaintiff's motion to strike Defendants' Second Affirmative Defense should be denied.

### 3.  Unclean Hands

Defendants allege that Plaintiff made knowing and material misstatements in its UDRP complaint, and also to the USPTO in procuring its trademark registrations.  Such actions constitute unclean hands, and therefore the defense is properly pleaded.

### 4.  Failure To Mitigate Damages

Defendants allege that Plaintiff only made an insulting offer to buy Defendant SiteTools' valuable Domain property for $5,000 in 2017.  Plaintiff knows or should know that a "dictionary word" .com domain name is inherently many, many times more valuable than that paltry sum.  Rather than making a fair offer to purchase the name, Plaintiff instead has willfully failed to even attempt to mitigate its damages by negotiating a fair price for the Domain.  Plaintiff has also failed to register alternative domains or to police third-party uses that are equally or more infringing of Plaintiff's trademark rights, further causing Plaintiff's alleged damages.  Therefore, Defendants properly state this defense.

### 5.  Good Faith; Innocent Intent

Defendants' good faith registration and use of the Domain – e.g., Defendant's innocent intent -- is a statutory, complete defense to Plaintiff's ACPA cybersquatting claim. *See*, *e.g., Interstellar Star Services, Ltd. v. Epix, Inc.,* 304 F.3d 936, 946 (9th Cir. 2002):

> the ACPA contains a safe harbor provision: Bad faith "shall not be found in any case in which the court determines that the person believed and had a reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

Accordingly, Defendants properly plead these defenses.

### 6.  Failure To State A Claim; Lack of Damages; Unjust Enrichment; Frivolous Claims; Right to Amend

1   Defendants agree to strike these as affirmative defenses.

2   **IV.  CONCLUSION**

3   For the foregoing reasons, Plaintiff's motion to strike and dismiss should be denied.

4   In the alternative, Defendants' should be allowed leave to amend their pleadings in light of

5   and in accord with the Court's findings.

6

7   RODENBAUGH LAW

8   Dated:  June 2, 2021

9   By: _Mike Rodenbaugh_

10   Mike Rodenbaugh (179059)

11

12   *Attorneys for Plaintiff and Counter-*

13   *defendant*

14

15   <u>**CERTIFICATE OF SERVICE**</u>

16   I hereby certify that on June 2, 2020, I electronically filed the foregoing with the

17   Clerk of the Court by using the CM/ECF system which will send notice of electronic filing

18   to all parties at the email addresses on file with the Clerk of Court.

19

20   By: /s/ Marie Richmond

21   Marie E. Richmond (292962)

22

23

24

25

26