Milord A. Keshishian, SBN 197835
milord@milordlaw.com
Stephanie V. Trice, SBN 324944
stephanie@milordlaw.com
**MILORD & ASSOCIATES, P.C.**
10517 West Pico Boulevard
Los Angeles, California 90064
Tel: (310) 226-7878
Fax: (310) 226-7879

Attorneys for Plaintiff
POCKETBOOK INT'L SA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POCKETBOOK INT'L SA;<br><br>Plaintiff,<br><br>vs.<br><br>DOMAIN ADMIN/SITETOOLS, INC.; and PHILIP ANCEVSKI aka FILIP ANCEVSKI;<br><br>Defendants.<br>_____<br>AND RELATED COUNTERCLAIMS | Case No.: 2:20-cv-8708 DMG (PDx)<br><br>**POCKETBOOK INT'L SA'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANTS' UNFAIR COMPETITION COUNTERCLAIM PURSUANT TO CCP 425.16, AND TO DISMISS UNDER RULE 12(b)(6) OR STRIKE THE CANCELLATION, REVERSE DOMAIN NAME HIJACKING, AND UNFAIR COMPETITION COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES**<br><br>Date: June 18, 2021 hearing vacated ECF 32<br>Time: 9:30 a.m.<br>Courtroom: 8C |

Plaintiff Pocketbook Int'l SA ("Pocketbook") submits its reply in support of its motion to strike Defendants' Domain Admin/Sitetools, Inc. and Philip Ancevski's counterclaim for Section 17200 unfair competition under California Code of Civil Procedure § 425.16 ("anti-SLAPP statute"), to dismiss the three counterclaims under Federal Rule of Civil Procedure § 12(b)(6), to strike the counterclaim's references to the UDRP proceedings and rulings, and to strike the affirmative defenses under Rule 12(f). Pocketbook is to be awarded attorney's fees and costs under the anti-SLAPP statute.

## Legal Argument

### A. The Court should strike Defendants' references to the UDRP decision.

This Court previously determined that the UDRP decision has no binding or conclusive effect in this matter. Thus, Pocketbook maintains that reference to the UDRP proceeding in Defendants' counterclaim is irrelevant and misleading.

> In light of the UDRP's clear language providing for "independent resolution" of domain name disputes, the Court will not give any weight to the UDRP panel decision in deciding Pocketbook's ACPA claim.

(Order, ECF No. 23). In paragraph 13 of its counterclaim, Defendants allege that a three-member expert domain dispute resolution panel unanimously denied Pocketbook's UDRP complaint. Beginning at page 16, lines 24 of the counterclaim and ending on page 17, line 7, Defendants included a passage from the panel. Defendants characterized the words of the panel as a holding that they did not act in bad faith. (Counterclaim, ECF 25, p. 16, lines 22-23.) Pocketbook seeks to strike these statements from the counterclaim.

Because the Court is not bound by a decision, ruling, or reasoning from the panel, Defendants' inclusion of the passage is entirely irrelevant or immaterial and prejudicial. As the First Circuit recognized in *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 24-26 (1st Cir. 2001), the UDRP provides for a mandatory administrative proceeding "while permitting 'independent' judicial resolution of the same disputes. (Order, ECF No. 23, p. 5.) This "second bite at the apple" (see *Storey v. Cello Holdings, L.L.C.*, 347

-1-
POCKETBOOK'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE
PURSUANT TO CCP 425.16 AND DISMISS UNDER RULE 12(b)(6)

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

F.3d 370, 381 (2d Cir. 2003)) makes the "first bite" completely immaterial. "Immaterial" means the matter has no bearing on the controversy before the court. *Tucker v. American Int'l Group, Inc.*, 936 F. Supp. 2d 1, 15-16 (D. Conn. 2013).

Defendants compound the impropriety of quoting from the UDRP panel by mischaracterizing the purported holding. They allege that the UDRP unanimously held that Defendants did not act in bad faith. The UDRP did not make this holding from the quoted passage; it merely articulated the higher burden of proof it was expecting: "In such circumstances, the Panel would require to see very clear evidence of bad faith on the part of Respondent if the Panel were to find in favor of Complainant." (Counterclaim, ECF No. 25, p. 17, lines 5-7.) Given the immaterial nature of the allegation and Defendants' miscomprehension as to its import, the Court should strike the allegation.

**B.   The Court should strike or dismiss the cause of action for cancelation of Pocketbook's federally registered trademark.**

For purposes of Rule 12(b)(6), "claim" means a set of facts that, if established, entitle the pleader to relief. *Bell Atlantic Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007). Where a purported claim fails to allege facts sufficient "to support a cognizable legal theory," dismissal under Rule 12(b)(6) is proper. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "[F]ormulaic recitations of the elements of a cause of action" are insufficient if not supported by factual allegations. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965; *Ashcroft v. Iqbal* ("*Iqbal*"), 555 U.S. 662, 679, 129 S.Ct. 1937, 1965 (2009). The pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. *Twombly's* plausibility requirement is "to prevent settlement extortion – using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." *Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Med.*

*Ctrs. Retirement Plan v. Morgan Stanley Investment Mgmt. Inc.*, 712 F.3d 705, 719 (2nd Cir. 2013).

Defendants failed to plead facts sufficient to constitute the relief for cancelation of Pocketbook's federally registered trademark. A federally registered trademark may be canceled based on statutory grounds where the petitioner "believes that he is or will be damaged … by the registration of a mark on the principal register …." 15 U.S.C. § 1064. Abandonment of a registered trademark is a ground for cancelation. *Id.*, subpara. (3). However, the term "abandonment" is conclusory by definition: "A mark shall be *deemed* to be 'abandoned' if either of the following occurs …." 15 U.S.C. § 1127 (emphasis added). A mark deemed to be abandoned for nonuse is essentially an adjudication or conclusion made from circumstances concerning the trademark owner's actions or inactions over a period of time.

Defendants allege only the conclusory elements seeking the relief of cancelation: Plaintiff's failure to use the trademark in commerce for at least 6 years with no intention to resume use of the trademark. Defendants argue that 6 years of nonuse constitutes a *prima facie* case for abandonment when such *facts* are properly construed in light most favorable to Defendants. (Opposition, ECF No. 29, p. 17, lines 11-14.) They boast, "there is ample evidence to prove that Plaintiff did not intend to resume use." (*Id.*, line 19.) Though they have knowledge of these facts and circumstances (*Id.*, lines 16-17), they did not plead them, forcing Plaintiffs to have notice of them through discovery. Holdings in *Twombly* and *Iqbal* prevent this evasive practice of pleading. If Defendants cannot articulate the facts or circumstance to support their information and belief, then the Court should dismiss their cause of action requesting the relief of cancelation.

Only persons that believe they are or will be damaged by the federally registered trademark may seek cancelation. 15 U.S.C. § 1106; *see United Shoe Machinery Corporation v. Compo Shoe Machinery Corporation*, 56 F.2d 292, 295 ("Certainly the person seeking to cancel a registration or oppose an application for registration must have a greater interest than a member of the general public who by such registration

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

suffers no invasion of his rights and privileges."). Defendants did not allege any facts upon which it can be presumed they are damaged by Plaintiff's federal registration. The court may also dismiss this cause of action on the basis of this defect.

### C. The Court should strike or dismiss the cause of action for reverse domain name hijacking ("RDNH") because Defendants still hold the domain name.

15 U.S.C. § 1114(2)(D) limits the remedies given to the owner of a right infringed. Pertinent to this dispute:

> A domain name registrant whose domain name *has been* suspended, disabled, or transferred … may … file a civil action to establish that the registration or use of the domain name by the registrant is not unlawful…. The court may grant injunctive relief to the domain name registrant, including reactivation of the domain name or transfer of the domain name to the domain name registrant.

*Id.*, subpara. (v) (emphasis added). The phrase, "has been suspended, disabled, or transferred," is worded in the present perfect tense, which refers to an action or state that, either occurred at an indefinite time in the past or began in the past, and continued to the present time. That is, the statute pertains only to those situations where the registrant sustains the negative action to his, her, or its domain name at the time the cause of action is initiated. *See Aevoe Corporation v. Pace*, 2021 WL 13069926, *4:

> [B]ecause a claim for reverse hijacking requires that the domain name actually be suspended, disabled or transferred, Defendant cannot make out such a cause of action.

The remedial portion of the statute supports the interpretation that a continued harm must exist in order to state a RDNH cause of action. The statute empowers a court to grant injunctive relief that essentially reverses the negative effect and reinstates ownership or activation of the domain name. If the domain name is neither suspended, disabled, nor transferred, the court is left with no remedy to grant. *See Id.*; see *Barcelona.com, Inc. v. Excelenti si mo Ayuntami ento de Barcelona*, 330 F.3d 617, 624-25 (4th Cir. 2003) (reasoning that even though domain name had not actually been transferred, the WIPO order to transfer the domain name was within purview of statute's

-4-

purpose to prevent the inevitable transfer by the registrar unless a court action is filed).

Defendants do not have a viable cause of action under 15 U.S.C. § 1114(2)(D)(v) because its domain name is not presently suspended, disabled, or transferred. The statute requires them to allege that their domain name "has been suspended, disabled, or transferred." They allege the domain name was temporarily suspended or disabled during the pendency of the UDRP proceeding. (Counterclaim, ECF No. 25, ¶¶ 12, 21.). Unlike the circumstances in *Aevoe* and *Barcelona.com*, Defendants retain ownership of their domain name, and it is active. Their argument that their domain name could have been transferred is insufficient. The statute does not provide a remedy for the possibility of what might have been; if it did, Congress would have expressed its intent in this regard. They further argue that the statute does not require the suspension to be in place. Defendants provided no legal authority or analysis to support this proposition. In their counterclaim, they seek compensatory damages (Counterclaim, ECF No. 25, ¶ 23), yet 15 U.S.C. § 1114(2)(D) does not expressly provide such remedy.

Thus, the Court should grant Pocketbook's Motion and dismiss or strike Defendants' cause of action for RDNH with prejudice.

**D. The Court should strike or dismiss the cause of action for unfair competition because it is based on Plaintiff's protected activity and because Defendants do not plead sufficient facts to specify a predicate act of unlawful, fraudulent, or unfair business practice.**

Defendants' cause of action for unfair competition is grounded in Pocketbook's filing of a UDRP complaint. After incorporating all previous allegations, Defendants allege that "Plaintiff's wrongful acts … are unlawful and unfair, and have caused damage to Defendant [sic] and substantial injury to its [sic] business …." Defendants do not specify what acts of Plaintiff are wrongful in their counterclaim; however, they explain their cause of action for unfair competition is "… about statements made by Plaintiff in its UDRP complaint. (Opposition, ECF No. 29, p. 10, lines 14-21.). Pocketbook's statements made in a UDRP complaint, however, are protected activity

-5-

within the purview of California's anti-SLAPP statute.  Considering the UDRP proceeding evolved or emanated from treaties with other sovereign nations, California's anti-SLAPP statute is to be broadly construed, and the UDRP necessarily contemplates judicial action, the filing of a UDRP complaint is the type of activity California's anti-SLAPP statute was enacted to protect.

The World Intellectual Property Organization ("WIPO") is an intergovernmental organization, which in 1974 became one of the specialized agencies of the United Nations system.  Its' mission is "to lead the development of a balanced and effective international IP system that enables innovation and creativity for the benefit of all.  Its stated main objectives are "(i) to promote the protection of intellectual property worldwide; and (ii) to ensure administrative cooperation among the intellectual property Unions established by the treaties that WIPO administers."  *See* <https://www.wipo.int/treaties/en/convention/summary_wipo_convention.html>.  WIPO's member states determine the direction, budget, and activities of the organization.  <https://www.wipo.int/members/en/>.

The Internet Corporation for Assigned Names and Numbers ("ICANN") grew out of the United States Government's commitment to transfer policy and technical management of the Domain Name System ("DNS") to a non-profit corporation based in the United States with global participation.  In 1997, the United States Government approved the transition of the technical management of the Domain Name System ("DNS") to the private sector.  In 1998, the Department of Commerce formally recognized ICANN as the new organization responsible for administering the DNS through a Memorandum of Understanding signed by both parties. <http://archive.icann.org/en/meetings/santiago/udrp-staff-report.htm>.

California's anti-SLAPP statute is not limited to strictly judicial or official proceedings.  To the contrary, the Legislative purpose of the statute – to encourage continued participation in matters of public significance – "shall be construed broadly."  Cal. Code of Civ. P. § 425.16(a).  For example, a filing before the National Association

of Securities Dealers ("NASD") constituted protected activity under the "official body / proceeding" prong of the anti-SLAPP statute. *Fontani v. Wells Fargo Investments, LLC*, 129 Cal.App.4th 719, 728-730 (reasoning that the NASD, acting under the aegis of the Securities and Exchange Commission, is the primary regulatory body for the broker-dealer industry and thus performs uniquely regulatory functions typically performed by a governmental regulatory agency). Another example, complaints to Amazon.com invoking its policy against unauthorized use of another's trademark on its website was deemed protected prelitigation communications subject to anti-SLAPP purview. *Thimes Solutions Inc. v. TP Link USA Corporation*, 2020 WL 4353681 (C.D. Cal. 2020).

      ICANN was created under the aegis of the United States government. Like the NASD, it serves as the primary regulatory body for domain name registrations, and registrants and members are required to follow its rules and policies. ICANN performs the uniquely regulatory functions typically performed by a governmental regulatory agency in that such regulatory functions were transitioned from the United States government to ICANN. In addition, the UDRP's clear language contemplates the initiation of the judicial process. UDRP, ¶ 4(k). Thus, Defendants' counterclaim is barred by the anti-SLAPP statute because the UDRP proceeding was filed in furtherance of Pocketbook's exercise of its free speech rights. Cal. Civ. Proc. Code § 425.16. Also, statements made during the UDRP proceeding cannot form the basis of Defendants counterclaim because its barred by California's litigation privilege. Cal. Civ. Code § 47(b).

      Defendants argue that while the WIPO is quasi-public for the purpose of protected activity, Forum is not. Defendants fail to recognize that, like WIPO, ICANN has approved Forum (identified as "National Arbitration Forum") to serve as an accredited dispute resolution service provider. <https://www.icann.org/resources/pages/providers-6d-2012-02-25-en>. Clicking on the hyperlink, National Arbitration Forum, directs you to the home page of Forum. In addition, Defendants allege that their domain name registrar immediately disabled their ability to update or transfer the domain name upon

Plaintiff's filing of its UDRP complaint with Forum. Defendants concede that Pocketbook's administrative complaint with a purportedly private entity had repercussions directing its registrar to temporarily suspend their domain name rights, akin to a court's issuance of a preliminary injunction. In this regard, Forum served the function of an administrative agency or under the aegis of an administrative agency – ICANN. Pocketbook's UDRP complaint was akin to a petition to a governmental-type agency, immunized under the *Noerr-Pennington* doctrine.

Pocketbook has, therefore, satisfied the first prong – its filing of a UDRP complaint in accordance with the mandatory rules promulgated by ICANN is protected activity under California's anti-SLAPP statute. Defendants have not demonstrated a probability of success on the merits. They miscomprehend the legal standard employed in anti-SLAPP adjudications arguing, "Plaintiff has not come close to establishing by a 'reasonable probability' that the Plaintiff will prevail on these claims." (Opposition, ECF No. 29, p. 11, lines 15-16.). It is Defendants that bear the burden of reasonable probability.

Defendants do not sufficiently plead facts to support a cause of action for unfair competition; therefore, they have not demonstrated a reasonable probability they will prevail. Defendants' reliance upon their causes of action for cancelation and RDNH are immaterial to the second prong of the anti-SLAPP statute. Cancellation does not involve an adjudication of the type of wrongdoing contemplated in an unfair competition claim. The same is true when pleading cause of action for RDNH. Instead, Defendants' unfair competition claim is rooted in Pocketbook's filing of a UDRP complaint. Defendants allege that Pocketbook knowingly made false statements in its UDRP complaint. Even though they identify the particular statements, Defendants do not allege which statements are false. Making a material misrepresentation implies fraud under California's unfair competition statute. Federal courts require a party to plead fraud with particularity. Fed. R. Civ. P. 9(b). Defendants do not plead with any particularity its allegations that Plaintiff committed fraud in its UDRP complaint.

For these reasons, the Court should strike or dismiss Defendants' cause of action for unfair competition.

### E. The Court should strike or dismiss Defendants' affirmative defenses.

Defendants' agree that the court should strike their affirmative defenses for failure to state a claim, lack of damages, unjust enrichment, frivolous claims, and right to amend. (Opposition, ECF No. 29, pp. 22-23.)

Defendants' argument for why the court should not strike its "failure to police" affirmative is confusing. Defendants allege that Pocketbook waited nine years after they obtained the domain name to file the UDRP complaint. Yet, in its opposition, they argue that Pocketbook waited two years to allege infringement. Defendants, however, do not address Pocketbook's argument that a failure to police requires pleading and proof of an owner's intent to abandon the trademark or a course of conduct causing the mark to become generic or lose its significance as a trademark. In this regard, Defendants have not articulated which prong it bases its affirmative defense or set forth the facts supporting either prong.

Despite their arguments, Defendants did not plead the requisite prejudice for laches or facts demonstrating Pocketbook's waiver, consent, ratification, or acquiescence.

Defendants' affirmative defense of unclean hands is identical to their allegation concerning Pocketbook's misrepresentations in its UDRP complaint. They add that Pocketbook committed fraud upon the United States Patent and Trademark Office "in procuring its trademark registrations." However, Defendants did not make any factual allegations in their answer, though they admit that some factual bases for its affirmative defenses are required. Further, fraud should be pleaded with particularity, which Defendants have failed to plead.

Thus, the Court should strike the aforementioned affirmative defenses.

-9-
POCKETBOOK'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE
PURSUANT TO CCP 425.16 AND DISMISS UNDER RULE 12(b)(6)

## Conclusion

Pocketbook's UDRP complaint was protected activity, and Defendants do not demonstrate a probability of success on their unfair competition counterclaim. Therefore, this Court should strike the cause of action for unfair competition and award Plaintiff its attorneys' fees and costs. The Court should also dismiss the causes of action for cancellation and RDNH and strike all references to and ruling in the UDRP proceeding. The Court should also dismiss the subject affirmative defenses because they are either not affirmative defenses or are insufficiently pleaded.

Respectfully submitted,

Dated: June 18, 2021   **MILORD & ASSOCIATES, P.C.**

/s/Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiff
POCKETBOOK INT'L SA