1  Milord A. Keshishian, SBN 197835
   milord@milordlaw.com
2  Stephanie V. Trice, SBN 324944
   stephanie@milordlaw.com
3  MILORD & ASSOCIATES, P.C.
   10517 West Pico Boulevard
4  Los Angeles, California 90064
   Tel: (310) 226-7878
5  Fax: (310) 226-7879
   Attorneys for Plaintiff
6  POCKETBOOK INT'L SA

7               **UNITED STATES DISTRICT COURT**
8               **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POCKETBOOK INT'L SA;<br><br>Plaintiff,<br><br>vs.<br><br>DOMAIN ADMIN/SITETOOLS, INC.; and PHILIP ANCEVSKI aka FILIP ANCEVSKI;<br><br>Defendants. | Case No.:  2:20-cv-8708<br><br>**FIRST AMENDED COMPLAINT FOR:**<br>1. **False or Fraudulent Registration 15 U.S.C. § 1120;**<br>2. **Cancellation of the U.S. Registration No.: 4,099,793 15 U.S.C. §§ 1064 and 1119**<br><br>**JURY TRIAL DEMANDED** |

-1-
**FIRST AMENDED COMPLAINT**

## COMPLAINT

Plaintiff Pocketbook International SA ("Pocketbook" or "Plaintiff"), by its counsel, hereby demands a jury trial and complains of Defendants Domain Admin/SiteTools, Inc. and Philip Ancevski aka Filip Ancevski (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1. This is a civil action for (i) False or Fraudulent Registration 15 U.S.C. § 1120; and (ii) Cancellation of the U.S. Registration No.: 4,099,793 15 U.S.C. §§ 1064 and 1119. As set forth below, Defendants have falsely or fraudulently registered "POCKETBOOK.COM" as a trademark to legitimize their anticompetitive use of the domain name to divert Plaintiff's customers to Defendants' website where they display the "POCKETBOOK®" trademark with the registration symbol, even though their registration is for the "POCKETBOOK.COM" mark. Thus, the false or fraudulent registration of the POCKETBOOK.COM trademark has damaged Pocketbook and should be cancelled.

## PARTIES

2. Plaintiff Pocketbook International SA is a company organized under the laws of Switzerland and located at Crociccio Cortogna, 6, 6900 Lugano, Switzerland. Pocketbook International SA operates all business associated with the POCKETBOOK products.

3. On information and belief, Domain Admin/SiteTools, Inc., is a company organized under the laws of the State of California and located at 1101 Lincoln Boulevard, Santa Monica, CA 90403. On information and belief, Domain Admin/SiteTools, Inc. owns, operates and administers the domain POCKETBOOK.COM and is the registered owner of Registration No. 4,099,793.

4. On information and belief, Philip Ancevski aka Filip Ancevski ("Mr. Ancevski") is a resident of the State of California and a sole owner/director of the Domain Admin/SiteTools, Inc. It is further believed that Mr. Ancevski is conscious, dominant and active force behind the wrongful acts of the Domain Admin/SiteTools,

Inc., in which Domain Admin/SiteTools, Inc. has engaged in as set forth below for the benefit of Mr. Ancevski and for his own individual gain and benefit.

## JURISDICTION AND VENUE

5. This action arises under federal trademark laws, 35 U.S.C. §§ 1051 *et seq.*, and thus this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121.

6. This Court has personal jurisdiction over Defendants because Defendants reside in the State of California and are directly engaging in the actionable conduct within the State of California and in this District, as alleged herein.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because Defendants reside in this District, conduct, transact and/or solicit business in this judicial district such that its contacts with this district subject them to personal jurisdiction with respect to this action and, upon information and belief, a substantial part of the events or omissions giving rise to Plaintiff's claims, specifically the false and fraudulent registration of the POCKETBOOK.COM trademark and maintenance thereof, has occurred, and continues to occur in this judicial district, causing damage to Plaintiff in this judicial district.

## FACTS

### Pocketbook Trademark Rights

8. Pocketbook is a well-known and recognized leader in the field of e-readers, and was established as early as 2008. Pocketbook offers e-reader devices, variety of reading software applications, and cloud-based services that allow users to maintain and manage their e-libraries, synchronize e-books and bookmark their reading materials across all of their devices. Many of the Pocketbook e-readers have been certified by the Federal Communication Commission (FCC). The Pocketbook e-reader has been described as a "super comfortable e-book reading app from one of the world's leading

experts in e-reading." The Pocketbook application has been installed almost four million times on Google Play market and has been installed in excess of two hundred twenty thousand times on iOS market.

9. Pocketbook has sold its products on four continents, including North America, South America, Europe, and Asia. Pocketbook has offices in Lugano, Switzerland; Moscow, Russia; Dresden, Germany; Kyiv, Ukraine; and Shenzhen, China. Pocketbook has produced and sold over fifty (50) different models of e-readers and has sales in excess of forty countries, including most European countries, Russia, eastern Europe, Brazil, and the United States.

10. Pocketbook's products are sold at various partner locations in the United States and around the world, including on-line marketplaces, such as amazon.com, amazon.de, amazon.es, amazon.it, alzsa.cz, newegg.com, eprice.it; and in retail stores such as Carrefour, MediaMarkt, Power (Dixon Group), Technopolis, Cultura, Auchan, Conrad, PC components, Euronics, Interdiscount, France Luiser, Apollo, Decitre, Conad, Eldorado and many others. The vast superiority of the Pocketbook's products resulted in sales of millions of units. In 2017 alone, Pocketbook shipped approximately 836,000 units, the third largest number of units shipped by any e-reader company worldwide.

11. The recognition of high quality and popularity of the Pocketbook's products and services are demonstrated by the consistent and constant reviews, and third-party articles regarding Pocketbook's products.

12. Pocketbook has attended numerous industry events where it received overwhelming recognition from its peers and consumers, for example, Consumer Electronics Show (CES) in Las Vegas Nevada, IFA show in Germany, Distree EMEA at Monaco, Salon du Livre in Paris, The Electronics Retail Summit in Maryland, USA, Distree Brazil & LatAm in Brazil, Vilnius Book Fair, Microsoft NT Conference in Slovenia, and Distree APAC in Singapore and other. Pocketbook products have received numerous awards and recognition certificates. For example, since 2009 the Pocketbook products have received POCKETBOOK 360 - Lesen.net, 2009 (Germany);

POCKETBOOK 302 - "Best Product of the Year", June, 2009 (Russia); Brand "PocketBook" - Product of the Year, 2009 (Russia); POCKETBOOK 301 – the IXBT "Original Design" in November, 2009 (Russia); POCKETBOOK 360 New - by DigiMedia Portal as Editorial Choice, Russia, 2010; POCKETBOOK A10 - the RedDot Award 2012; POCKETBOOK Touch Lux 2 – Red Dot Award 2014; POCKETBOOK Reader Flex – Red Dot Award 2015; and POCKETBOOK Touch Lux 3 – selected by Altroconsumo as best e-reader in Italy, 2019; Best Design PocketBook Touch HD 3 and PocketBook Touch Lux 4 - RedDot Award 2019. In fact, Pocketbook's products have received a prestigious Red Dot Award four times. Further, Pocketbook received the DISTREE EMEA 2016 and 2017 Diamond Award in the PCs, Tablets & E-Readers category.

13.     Plaintiff owns all rights, title and interest in U.S. Trademark Registration Nos.: 3,675,976 and 4,820,128, which are design trademarks that include word element "pocketbook" for Pocketbook's products and services, including, in part, portable and handheld digital electronic devices and downloadable computer programs for transmitting, sharing, receiving, downloading, displaying and transferring content ("Pocketbook Marks").  The Pocketbook Marks were registered with the U.S. Patent and Trademark Office ("USPTO") on September 01, 2009 (No. 3,675,976) and September 29, 2015 (No. 4,820,128), and are currently in force.

14.     Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), Pocketbook's federal registration certificates for the Pocketbook Marks are prima facie evidence of the validity of the Pocketbook Marks.

15.     Pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, one of the Pocketbook Marks (U.S. Reg. No.: 3,675,976) has become incontestable.  Based on its incontestability under Section 15 of the Lanham Act, 15 U.S.C. § 1065, the federal registration of this mark is conclusive evidence of Pocketbook's exclusive right to use this marks in commerce in connection with the goods identified in the registration.

16.     To create and maintain goodwill among its customers, Pocketbook and its

subsidiaries and/or licensees have taken significant steps to assure that all products and services bearing the Pocketbook Marks are of the highest quality. The Pocketbook Marks are extremely valuable to Pocketbook because consumers purchase Pocketbook readers and services based on the goodwill and quality that Pocketbook Marks signify.

17. As set forth above, the Pocketbook Marks are famous and are widely recognized both by the public and trade, and has built up extensive goodwill.

18. The Pocketbook Marks are also inherently distinctive trademarks to both the public and trade in connection with the products and services offered under the marks. Moreover, the Pocketbook Marks serve as a designator of origin of products and services originating from or sponsored or licensed by Pocketbook.

19. Pocketbook has never authorized the Defendants to use the Pocketbook Marks, or any confusingly similar marks on any e-readers or software applications.

### Defendants Business Model

20. On information and belief, Defendants engage in a business model of registering domains of well-known brands with intent to sell the domains to the lawful owners of the brands or, alternatively, to divert the internet traffic from the legitimate websites to the Defendants' own websites by creating a confusion as to the source and sponsorship. On information and belief, Defendants' have registered over four hundred twenty-seven domains.

21. On information and belief, in order to legitimize the ownership of the domains, Defendants attempt to falsely or fraudulently register trademarks with the USPTO that are similar to the domain names they register.

22. Upon information and belief, Defendants, have registered the Domain Name "POCKETBOOK.COM" after the Pocketbook has been consistently and with great success selling its products and services under the Pocketbook Marks. That is, at the time of the Defendants' acquisition of the Domain Name, the Pocketbook Marks were well established and well known in the marketplace for its e-readers and associated services.

23. Pocketbook's use of the Pocketbook Marks in commerce began prior to Defendants' acquisition of the Domain Name.

24. Upon information and belief, Defendants initially used the Domain Name to link the Domain Name to third-party websites for e-readers. That is, the Domain Name was used to connect the users of the Domain Name with Pocketbook's direct competitors, so that the user can purchase the competing products. Further, Defendants have used Pocketbook's most popular e-reader trademark "Surfpad" in URLs of its website to mislead consumers to Defendants' website. Moreover, the Pocketbook Marks have been prominently displayed on Defendants' websites associated with the Domain Name, wherein they have displayed the trademark registration symbol "®" next to "pocketbook" in a false or fraudulent manner.

25. The Domain Name subsequently was redirected to a link website for financial products, and finally to the website *refinancemortgage.com* that provides "an online application to manage and share your financial goals and needs." The Pocketbook Mark continues to be prominently displayed on the webpage of the domain name *refinancemortgage.com*, along with the trademark registration symbol "®" next to "pocketbook" in a false or fraudulent manner. It is clear that the only rationale for registering the Domain Name is to capitalize on the consumers' awareness of Pocketbook's products and services associated with the Pocketbook Marks by diverting the Pocketbook consumers to Defendants' products and services, or Pocketbook competitors' products and services.

26. On information and belief, Defendants previously have misappropriated internet traffic of Pocketbook by using Pocketbook Marks to advertise and purchasing advertisements for the Domain Name on various news websites that publish information about e-readers. However, Defendants latest illicit strategy is to use the popularity of Pocketbook's products and Pocketbook Marks to attract consumers seeking Pocketbook products by causing confusion amongst consumers by including the trademark registration symbol "®" next to "pocketbook" in a false or fraudulent manner. For

example, Pocketbook released a new product (color e-reader) that became very successful, and as a result the internet traffic to the Domain Name has increased in correlation with the release of the new color e-reader.

27. Moreover, genuine and actual confusion exists in the marketplace as a result of the Defendants' actionable conduct. For example, Pocketbook's partner IT Reseller used Defendants' registered trademark "pocketbook.com" when placing an advertisement for Pocketbook's new color e-reader.

28. On information and belief, Defendants fraudulently filed for and obtained the United States trademark registration for POCKETBOOK.COM (U.S. Reg. No.: 4,099,793) for website design and publishing, as well as computers services. However, on information and belief, Defendants have not used the POCKETBOOK.COM with the designated in the registration services, but rather use their improperly obtained trademark to legitimize their infringing use of the Domain Name. In fact, the website *refinancemortgage.com* displays the Pocketbook Mark (i.e. POCKETBOOK®), rather than Defendants' mark POCKETBOOK.COM®. Further, Defendants fabricated a business card as a specimen of use they contend was printed by Vistaprint, but Vistaprint has no records of Defendants' order or purchase of any business cards, thus Defendants included a material falsehood in their trademark application and the registration is invalid.

29. Defendants are well aware that their use of the false or fraudulent registration of the trademark is causing significant harm to Pocketbook.

30. Defendants' aforementioned conduct is in bad faith and with intent to profit on the goodwill symbolized by the Pocketbook Marks by causing likelihood of confusion, mistake and deception as to the source and sponsorship.

31. As a result of Defendants' unlawful activities, Pocketbook has suffered irreparable harm, and, unless this Court enjoins Defendants, will continue to suffer irreparable harm for which there is no adequate remedy at law.

# FIRST CAUSE OF ACTION

## Damages From Fraudulent U.S. Trademark Registrations (15 U.S.C. § 1120)

32. Pocketbook repeats and incorporates by reference the allegations in the preceding paragraphs.

33. Under 15 U.S.C. § 1120, "[a]ny person who shall procure registration in the USPTO of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."  The Ninth Circuit has held that "[a]ny person who has a reasonable interest to be protected against the use of fraudulent statements in procuring a trademark registration—such as one who attempts to sell, market, license, or commercially exploit any product with the same name as the fraudulently procured trademark—may maintain a suit under Section 38 [15 U.S.C. § 1120]." *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993).

34. Defendants procured registration of "pocketbook.com" by false or fraudulent declarations or representations.

35. On November 10, 2010, the USPTO examining attorney refused registration of the POCKETBOOK.COM mark term because of a likelihood of confusion with the mark in [Plaintiff's] U.S. Registration No. 3675976."  The USPTO examining attorney found the parties' respective marks to be "identical or virtually identical" and Defendants' services and Pocketbook's goods "are closely related, because their functions of organizing, manipulating and/or storing data and information are similar where not identical."  On November 25, 2010, Defendants filed a response to the Office Action deleting some of the listed services to falsely or fraudulently overcome the refusal to register the mark because Defendants never had a bona fide intent to use the mark on the service listed and to this day have not done so.

36. On November 20, 2011, Defendants filed a "Statement of Use" and filed a fabricated specimen of use in the form of a business card with a British Pound symbol along with a declaration that, "The undersigned, being hereby warned that willful false

statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements may jeopardize the validity of the form or any resulting registration, declares that he/she is properly authorized to execute this form on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true." Defendant Ancevski was fully aware that the business card with the British Pound symbol had never been printed or used to designate the services listed in the application and that his statement was false or fraudulent.

37. In a December 7, 2011 USPTO Office Action, the specimen was rejected as not acceptable "because it does not show the applied-for mark used in connection with any of the services specified in the statement of use. A statement of use must include a specimen showing the applied-for mark in use in commerce for each class of goods and/or services specified in the statement of use."

38. On the same day, i.e., December 7, 2011, Defendant Ancevski responded to the December 7, 2011 Office Action and fabricated a new image of a business card as specimen of use adding the language "Create Your Webpage" and "Web Design Evolved" and this time featuring U.S. currency. Ancevski signed the response declaring that, "The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection

with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; that if the original application was submitted unsigned, that all statements in the original application and this submission made of the declaration signer's knowledge are true; and all statements in the original application and this submission made on information and belief are believed to be true." Ancevski was fully aware and knew that the mark was not in use "in commerce as early as 12/10/2010" or when he executed the declaration, and also knew that the specimen submitted was not legitimate and had never been printed to distributed. Thus, Ancevski was fully aware that his declaration was false or fraudulent in order to obtain registration.

39. Had the USPTO not relied on Ancevski's material misrepresentations, it would not have allowed registration of the purported trademark.

40. On February 12, 2018, Defendants filed a "Declaration of Use" under "Section 8" wherein Defendant Ancevski declared that "the mark is in use in commerce on or in connection with **all** goods/services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Application service provider (ASP) featuring software to enable blogging and link building of electronic media and user generated content or information over the Internet or other communications network for use in website design and publishing; Computer service, namely, acting as an application service provider in the field of knowledge management to host computer application software for searching and retrieving information from databases and computer networks; Computer service, namely, acting as an application service provider in the field of knowledge management to host computer application software for the collection, editing, organizing, modifying, book marking, transmission, storage and sharing of data and information; Computer services in the nature of customized web pages featuring user-defined information, personal profiles and information; Providing a website that gives users the ability to create customized web pages featuring user-defined information; Providing customized on-line web pages featuring user-defined information, which includes search engines and on-line web links

to other web sites ; or, the owner is making the listed excusable nonuse claim." Ancevski also submitted a fabricated specimen of use from refinancemortgage.com, wherein "Pocketbook®" appears on the page along with financial product claims, but there is no response when one attempts to "Log In To Your Pocketbook® Now!" Instead, if one logs in to refinancemortgage.com, one is taken to sitetools.com where there is no reference to Pocketbook® or Pocketbook.com® or any of the list of services Ancevski falsely and fraudulently declared to the USPTO he was providing. Ancevski knew that the statement was false or fraudulent because Defendants had never provided the services listed in the registration. In response to discovery requests, Defendants could not identify any advertising or customers for any of the services listed in the registration.

41. On March 9, 2018, the USPTO issued an Office Action rejecting Ancevski's specimen as "unacceptable because it does not reference the services specified in the registration."

42. On September 10, 2018, Ancevski submitted a fabricated new specimen that had never before existed on the financemortgage.com website, wherein the webpage was updated to falsely and fraudulently list services that Ancevski knew Defendants did not provide. The changed website specimen had not existed before, but Ancevski falsely declared that "The substitute specimen was in use in commerce during the relevant period for filing the 6-year Section 8." In fact, in discovery responses, Defendants failed to identify a single advertisement or consumer that utilized any of the listed services under the Pocketbook.com® mark.

43. On September 11, 2018, the USPTO accepted the false or fraudulent specimen. Had the USPTO not relied on Ancevski's material misrepresentations, it would not have accepted the Section 8 declaration or allowed the registration to remain in force and would have cancelled the registration.

44. On October 30, 2020, Ancevski improperly filed – because this lawsuit was instituted – a false or fraudulent Declaration of Incontestability of a Mark under Section 15 with the USPTO. In the declaration he once again falsely or fraudulently declared to

the USPTO that, "The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. § 1062(c), and is still in use in commerce on or in connection with all goods/services, or to indicate membership in the collective membership organization, listed in the existing registration." Ancevski knew at the time of executing the declaration that his statement was false or fraudulent.

45. As a result of the illicitly registered trademarks, which registrations were secured and maintained through the false and fraudulent scheme outlined above, Pocketbook has suffered damages from Defendants' purported exclusive rights in the POCKETBOOK.COM® registration, including Defendants' false claim that the registration is actually for merely POCKETBOOK® on their website.

46. By virtue of ownership of the federal registration, Defendants enjoy a false aura of exclusive rights in the POCKETBOOK® and POCKETBOOK.COM®, which they have used to create an aura of legitimacy to disrupt Pocketbook's business operations. Pocketbook has suffered damages based on at least diverted staff time and marketing expenses to counter Defendants use of the federal trademark registration to misdirect customers and to cause loss in the number of prospects. Pocketbook has incurred both monetary damages due to lost sales and reputational damages as a proximate result of Defendants' false or fraudulent federal registration.

47. Through the procurement of the federal registration by said false and fraudulent declarations and representations, Defendants are liable to Pocketbook for damages sustained in consequence thereof under 15 U.S.C. § 1120, which damages Pocketbook has suffered and are continuing to suffer.

**SECOND CAUSE OF ACTION**

**(Cancellation of the U.S. Registration No.: 4,099,793 (15 U.S.C. §§1064 and 1119))**

48. Pocketbook repeats and incorporates by reference the allegations in the proceeding paragraphs.

49. Section 1119 of the Lanham Act provides that in "any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." Section 1119 "cancellation is an available remedy for actions in which there is an independent cause of action involving harm caused by the trademark registration [under Section 1120] which the party seeks to cancel." *SmileDirectClub, LLC v. Berkely*, No. SACV181236JVSKESX, 2018 WL 8131096, at *9 (C.D. Cal. Oct. 26, 2018) (denying dismissal of Section 1119 claim even though there is no trademark infringement cause of action because Section 1120 claim sufficient).

50. Defendants claim ownership of the U.S. Registration No.: 4,099,793 to the term "POCKETBOOK.COM."

51. Defendants have not used the "POCKETBOOK.COM" mark with the services designated in the registration, but rather use their improperly obtain an appearance of legitimacy for Pocketbook's customers misdirected to Defendants' website, including by Defendants intentional use of Pocketbook's Surfpad trademark in their website's URL. For example, the website *refinancemortgage.com* displays Pocketbook® mark (i.e. POCKETBOOK), rather than Defendants' mark POCKETBOOK.COM. In fact, Defendants submitted the specimen to the United States Patent and Trademark Office that shows the Defendants' use of the Pocketbook's mark "POCKETBOOK", and not the "POCKETBOOK.COM" mark for which the specimen was submitted.

52. Accordingly, Defendants have falsely or fraudulently obtained the registration and/or abandoned U.S. Registration No.: 4,099,793 for term "POCKETBOOK.COM."

53. Pursuant to the Lanham Act, the Court has jurisdiction to order the United States Patent and Trademark Office to make appropriate entries on the Federal Register with respect to the U.S. Registration No.: 4,099,793, and its inability to serve as a proper

indicator of origin, due to its abandonment.

## PRAYER FOR RELIEF

WHEREFORE, Pocketbook respectfully requests the Court grant the following relief:

    A.    Entry of a judgment that Defendants have falsely and fraudulently obtained USPTO Registration No. 4,099,793 and have damage Pocketbook's rights under 15 U.S.C. § 1120;

    B.    Ordering Defendants to relinquish all rights in the Defendants' trademark POCKETBOOK.COM (U.S. Reg. No.: 4,099,793) and cancellation of said registration;

    C.    Entry of a judgment against Defendants for monetary damages in an amount to be proven at trial, necessary to compensate Pocketbook for Defendants' wrongful use of said registration, including reasonable attorneys' fees and costs;

    D.    Entry of a judgment against Defendants for legal fees upon a finding that this case is exceptional under 15 U.S.C. § 1117, and for increased damages upon a finding of willfulness in Defendants' unlawful acts alleged herein, said award to equal at least treble Defendants' actual damages under 15 U.S.C. § 1117; and

    E.    Such other and further relief as the Court may deem just and proper.

Dated: March 17, 2022

Respectfully submitted,

**MILORD & ASSOCIATES, P.C.**

/s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiff
POCKETBOOK INT'L SA

# **DEMAND FOR JURY TRIAL**

Plaintiff, through their attorneys of record, hereby demand trial by Jury.

Dated: March 17, 2022                    Respectfully submitted,

                                                               **MILORD & ASSOCIATES, P.C.**

                                                              /s/ Milord A. Keshishian
                                                              Milord A. Keshishian
                                                              Attorneys for Plaintiff
                                                              POCKETBOOK INT'L SA