Michael L. Rodenbaugh (California Bar No. 179059)
Jonathan Frost (California Bar No. 273189)
RODENBAUGH LAW
548 Market Street – Box 55819
San Francisco, California 94104
Phone:  (415) 738-8087
Email:  mike@rodenbaugh.com

*Attorneys for SiteTools, Inc. and Philip Ancevski*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

POCKETBOOK INT'L SA,

            Plaintiff,

        vs.

DOMAIN ADMIN/SITETOOLS,
INC., and PHILIP ANCEVSKI,

          Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.: 2:20-CV-8708-DMG
(PDx)

**REPLY BRIEF IN SUPPORT
OF MOTION FOR
ATTORNEYS' FEES**

Hon. Dolly M. Gee
August 19, 2022
9:30 a.m.

## Table of Contents

Introduction .................................................................................4

Argument .....................................................................................5

   I.    Plaintiff Cites an Incorrect Burden of Proof ....................................5

   II.      Plaintiff's ACPA Claim Was Objectively Baseless .............................6

    A.    Defendants Properly Moved for Summary Judgment ...........................7

    B.    Defendants Did Not Conceal Anything from Plaintiff ...........................9

    C.    Prior ACPA Cases Are Not Materially Distinguishable ......................10

   III.     Plaintiff's Trademark Infringement Claims Were Unreasonable ..........12

   IV.     Plaintiff's Motivations Were Illegitimate -- Neither Consumers Nor

Plaintiff Were Harmed by Confusion ..................................................13

   V.   Plaintiff's Litigation Tactics Were Unreasonable and Vexatious ................15

   VI.    Defendants' Conduct in this Case Has Been Reasonable .....................16

   VII.   Defendants' Attorneys' Fees Have Been Reasonable...........................19

Conclusion...................................................................................21

## Table of Authorities

**Cases**

*AirFX.com v. AirFX, LLC*, No. CV 11-01064-PHX-FJM, 2013 WL 857976 (D. Ariz. Mar. 7, 2013)..................................................................................10

*Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007)........5

*Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014) ......................19

*Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1152 (C.D. Cal. 2010) ..............17

*Clarilogic, Inc. v. Formfree Holdings Corp.*, 2016 WL 9774536 (S.D. Cal., Apr. 27, 2016) ............................................................................................7

*Dent v. Lotto Sport Italia SpA*, 2021 WL 242100, *6-10 (D. Ariz. Jan. 25, 2021)..11

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)....................................................19

*Nutrivita Labs. v. VBS Distribution,* 160 F. Supp. 3d 1184, 1192 (C.D. Cal. 2016)12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557, 134 S. Ct. 1749, 1758, 188 L. Ed. 2d 816 (2014) ............................................5

*Wilson v. Decibels of Or., Inc.*, No. 1:16-cv-00855-CL, 2018 U.S. Dist. LEXIS 137141, at *28, *30 (D. Or. Aug. 14, 2018)........................................20

**Statutes**

15 U.S.C. Sec. 1127 ...............................................................................................12

## **Introduction**

Defendants' argument for the award of its reasonable attorneys' fees is simple. Plaintiff acted unreasonably and with improper motivation by raising and then vexatiously prosecuting claims that could not possibly succeed in light of Ninth Circuit precedent and facts known to Plaintiff. Plaintiff maintained this litigation long after any hope of substantial redress, through the filing of a second motion for continuance, a motion for reconsideration based on nothing, and opposition to dismissal of its final feckless claim.

Plaintiff's objectively baseless litigation, illegitimate motivation, and egregious litigation tactics, all has caused substantial harm to Defendants who have been forced to pay attorneys to vigorously defend Defendants' valuable property from Plaintiff's quixotic lawsuit. Therefore, as in other highly similar cases cited to Plaintiff and this Court in prior briefing (and again herein), Defendants should be allowed to recover their reasonable attorneys' fees incurred in this case.

In response to Defendants' arguments, Plaintiff has incorrectly argued that Defendant concealed Ninth Circuit precedent *GoPets* from Plaintiff, that *GoPets'* progeny cases are distinguishable, and that Defendants litigated this case unreasonably. Finally, Plaintiff argues that Defendants have not properly substantiated the *Lodestar* amount. This Reply addresses each of those arguments.

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                    CASE NO.: 2:20-CV-8708-DMG

**Argument**

**I.**     **Plaintiff Cites an Incorrect Burden of Proof**

Plaintiff argues that Defendant must show compelling proof that this case is exceptional in order to prevail.  (Opp., Pg. 4 (*citing, Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007).)  However, Plaintiff's argument ignores the fact that in its *Octane Fitness* decision the Supreme Court overruled any heighted evidentiary burden of proof: "nothing in § 285 justifies such a high standard of proof.  Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557, 134 S. Ct. 1749, 1758, 188 L. Ed. 2d 816 (2014).  Thus, at the outset, Plaintiff proposes a higher burden of proof for an exceptional case than the Lanham Act or the Supreme Court requires.

Next, Plaintiff argues that Defendants have not met their burden to show that this case is exceptional because merely prevailing at summary judgement is not sufficient to show that a case is exceptional.  [Opp., Pg. 4].  However, Defendants have not asserted that Plaintiff's merely lost at summary judgement.  In fact, Defendants have demonstrated that Plaintiff raised frivolous and unreasonable arguments, and that Plaintiff's motivations were illegitimate.  Under *Octane Fitness* and its progeny, if Defendants show that a case stands out exceptionally from others by a preponderance of the evidence, based on the totality of the

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                                CASE NO.: 2:20-CV-8708-DMG

circumstances, then the Court can and should award fees.  *See, Octane Fitness, LLC*, 572 U.S. at 554.

## II.    Plaintiff's ACPA Claim Was Objectively Baseless

Plaintiff continues to ignore that the ACPA has two elements:  1) Plaintiff must have owned a distinctive mark at the time of domain registration; and 2) bad faith in registration or use of the domain name by the domain owner.  In this case, the second element was not even at issue, because the *GoPets* case is so clearly dispositive as to the first element.  Plaintiff still deceptively conflates the two distinct issues, arguing "that an ACPA claim does not only rest on bad faith at the time of domain registration, but includes post-registration bad faith conduct." [Opp., p.5.]

Plaintiff continues to emphasize the second element of its ACPA claim, citing cases discussing that "bad faith" element, and evidence that Plaintiff claims could support a finding of Defendants' bad faith.  [*Id.*, p.5-6.].  But in this case, that element is irrelevant because the initial registration date of <pocketbook.com> preceded the date that Plaintiff first adopted its mark, by many years.  Plaintiff continued to prosecute its ACPA claim even after that evidence and argument was presented, even after Plaintiff knew (or at least should have known) that it could never prove the first element.  Therefore, Plaintiff's prosecuted an objectively baseless claim.

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                                    CASE NO.: 2:20-CV-8708-DMG

## A.    Defendants Properly Moved for Summary Judgment

Plaintiff accuses Defendants' counsel of "concealing" the Defendants' "*GoPets* defense" until filing a motion for summary judgment "to increase their attorneys' fees instead of filing a motion to dismiss." [Opp., p. 6-8]. Plaintiff has not cited any case where an ACPA claim was dismissed on a Rule 12(b)(6) motion, and Defendant is unaware of any.

In support of this inflammatory and incredible charge, Plaintiff cites only *Clarilogic, Inc. v. Formfree Holdings Corp.*, 2016 WL 9774536 (S.D. Cal., Apr. 27, 2016), which considered Plaintiff's failure to file a 12(b)(6) motion to dispose of the matter on the basis that the claimed patent was an abstract idea. *Clarilogic,* however, is clearly distinguishable because the invalidity of a patent on the basis of being an abstract idea is *per se* decidable as a matter of law.

In this case, Defendants' summary judgment motion was based on extrinsic facts which were neither included nor referred to in the Plaintiff's complaint. Fundamentally, Defendants required extrinsic evidence in the form of the WHOIS record for <pocketbook.com> to establish the initial registration date, and the Wayback Machine archive records to establish legitimate use of the domain name long prior to Plaintiff's claimed adoption of its mark. In its complaint, Plaintiff made no reference to this WHOIS record, nor to the registration date in 1997, nor

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                                        CASE NO.: 2:20-CV-8708-DMG

to the archived website records and prior use.  Plaintiff pled in its Complaint (ECF #1, Nos. 23-24):

> 23. … at the time of the registration of the Domain Name, the Pocketbook was well established and well known in the marketplace for its e-readers and associated services.

> 24. Pocketbook's use of the Pocketbook Marks in commerce began prior to Defendant's registration of the Domain name.

Therefore, the registration date was a question of fact that could not be resolved at the pleading stage.

Additionally, Plaintiff raised many other meritless claims other than the ACPA claim, which other claims also relied upon factual elements of the ACPA claim.  For example, the dates at which Plaintiff first used, and later allegedly acquired distinctiveness, in its marks in U.S. commerce.  Those are both key dates subject to proof as to Plaintiff's trademark infringement and unfair competition claims, and also relevant to Plaintiff's ACPA claim.

Trademark infringement claims are very difficult to dismiss at the pleading stage, since priority and likelihood of confusion are generally held to be questions of fact.  Plaintiff does not cite any cases dismissing such a claim at the pleading stage, and Defendants are aware of very few such cases (generally brought *pro se*). Therefore, Defendants had no ability or motivation to seek to resolve those issues on a motion to dismiss.  Defendants had no choice but to conduct discovery and then file a motion for summary judgment.

## B.     Defendants Did Not Conceal Anything from Plaintiff

Plaintiff next argues that Defendant concealed the *GoPets* rule by allegedly withholding evidence "regarding 3rd party ownership of the domain." [Opp., p.9]. First, Plaintiff's protestation of concealment is belied by the fact that it raised the third-party ownership in its WIPO complaint in 2019:

> The Domain Name appeared to be originally owned by an unrelated, third party offering educational resources for teaching grade school. The original website associated with the Domain Name did not officially operate until January 2003, and then ceased operation in early 2004.

[Exhibit B, WIPO Complaint].  Thus, plaintiff knew of this evidence long before it filed its complaint with this Court.   Indeed, the evidence was from the Wayback Machine which is publicly and equally available to Plaintiff.  So, Defendants did not conceal anything from Plaintiff.

Next, Plaintiff argues that Defendant should have disclosed the fact that the ACPA claim was improper under *GoPets* in its discovery responses and as part of the Rule 26 Discovery Plan. [Opp., p.9].  Of course, neither discovery responses nor the Discovery Plan are appropriate venues to argue the merits of the Plaintiff's case.  A motion to dismiss could not succeed, and so Defendants could only potentially file a motion for summary judgment.

Plaintiff never had a reasonable claim of likelihood of confusion, but certainly that allegation would have withstood a motion for dismiss.  Therefore,

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                          CASE NO.: 2:20-CV-8708-DMG

Defendants were never going to get the case dismissed at the pleading stage, and their filing of a motion for summary judgment, after close of discovery, was entirely appropriate and reasonable.

Moreover, even after Defendant filed its summary judgment motion, Plaintiff could have voluntarily dismissed its claim but still opposed it, both in its opposition and at the video hearing.  At the video hearing, Plaintiff primarily argued that *GoPets* should not apply because "GoPets Ninth Circuit decision is in the minority with respect to the other circuits."  [Trans. p.6, ln.21].  To which the court replied: "As you know, the Ninth Circuit authority is binding on this Court. *GoPets* is a case where the Ninth Circuit found ample evidence of bad faith, and yet still concluded that there was no valid ACPA claim." [Trans. p.7, ln.2].  Under analogous circumstances in the *Dent* and *AirFX* cases, fees were awarded – and so they are also appropriate in this case.

### C.      Prior ACPA Cases Are Not Materially Distinguishable

Plaintiff argues that the decisions in *AirFX* and *Dent* are distinguishable from this case, even though the relevant facts of both cases are highly similar to this case: each case was decided within the Ninth Circuit after *GoPets* was decided; the domain owner prevailed at summary judgment; and this very same issue was decisive in dismissing each claim.  *AirFX.com v. AirFX, LLC*, 2013 WL 857976 (D. Ariz. Mar. 7, 2013); *Dent v. Lotto Sport Italia SpA*, 2021 WL 242100, *6-10 (D.

Ariz. Jan. 25, 2021).  Plaintiff's only argument to distinguish these cases is that the party asserting the ACPA claim knew about *GoPets* prior to the summary judgment motion.  [Opp., p.9].  However, this is not a relevant distinction, because Plaintiff's counsel surely could have and should have known about dispositive Ninth Circuit ACPA precedent, from more than a decade ago, before Plaintiff filed its complaint. And also,  the prior knowledge of *GoPets* was not a dispositive factor in awarding attorneys' fees in either of those cases.  Instead, the court in each case focused on the totality of the circumstances amounting to egregious litigation conduct.  And in each case the court awarded fees in an amount consistent with and greater than the amount requested in this case.

Plaintiff in this case was even more egregious than in the prior cases, as Plaintiff continued to oppose the Defendants' motion for summary judgment even after allegedly first learning of the *GoPets* decision, then Plaintiff submitted numerous frivolous objections and arguments in its response and at hearing, and then Plaintiff filed a frivolous motion for reconsideration of the Court's well-reasoned order granting the motion.  So, Plaintiff cannot argue that it lacked knowledge of *GoPets* at any or all of those times, and yet Plaintiff persisted long thereafter in its pernicious efforts to take Defendants' valuable domain name property through legal process that was always doomed to fail.

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                              CASE NO.: 2:20-CV-8708-DMG

### III.    Plaintiff's Trademark Infringement Claims Were Unreasonable

Plaintiff argues at length that its trademark claims were objectively reasonable.  [Opp., p.10-14.]  However, Plaintiff never offered any evidence as to how the parties' goods and services were related in any way – which is one of the two most important *Sleekcraft* factors.  Plaintiff meekly argued that both parties products involved a software app.  But is obvious that apps are used to promote and provide goods and services of myriad producers in myriad industries – often in association with overlapping identical marks owned by different producers in different industries.

Plaintiff also failed to produce any evidence of actual consumer confusion, despite the marks having co-existed for more than ten years.  Plaintiff also failed to provide any evidence as to the strength of its mark in the United States, as most of its complaint focused on use outside of the United States and its evidence of revenues showed only extremely minimal sales in the U.S.  Therefore, Plaintiff's likelihood of confusion analysis was fatally flawed from the outset.

Plaintiff relies heavily on the *Nutrivita Labs* case for the proposition that its trademark infringement analysis was not objectively baseless and could not support an award of fees.  [Opp., p.11 (*quoting, Nutrivita Labs. v. VBS Distribution,* 160 F. Supp. 3d 1184, 1192 (C.D. Cal. 2016).]  However, in that case the parties were direct competitors, the parties settled the dispute, and the plaintiff voluntarily

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                              CASE NO.: 2:20-CV-8708-DMG

dismissed its claims with prejudice. It is unsurprising that the court would deny

attorneys' fees on those facts. And as Plaintiff even quotes in its brief, that court

also mentioned in its analysis: "importantly, [defendant] makes no credible

argument that [plaintiff] brought this claim in bad faith or to harass [defendant]

with needless litigation." *Id.* In this case, Defendants do make very credible

allegations of Plaintiff's improper motivation and bad faith litigation tactics.

## IV.   **Plaintiff's Motivations Were Illegitimate -- Neither Consumers Nor Plaintiff Were Harmed by Confusion**

Plaintiff next argues that it was motivated primarily by an "affirmative duty

to enforce its trademarks against infringers." [Opp., p.13 (*citing,* 15 U.S.C. Sec.

1127).]. That code section only provides definitions for the Lanham Act, and a

statement of its intent – with no mention of any affirmative duty for anyone to do

anything. The intent of the act, as relevantly stated, is:

> to regulate commerce within the control of Congress by making
> actionable the deceptive and misleading use of marks in
> such commerce; … to prevent fraud and deception in
> such commerce by the use of reproductions,
> copies, counterfeits, or colorable imitations of registered marks."

Plaintiff's action never was intended to prevent consumer deception, as the

parties' goods and services were not only non-competitive, but indeed entirely

unrelated. Plaintiff did not even allege, much less prove, that anyone was ever

defrauded or misled by Defendants' use of their domain or trademark properties.

Indeed, the parties' business and marks coexisted for some ten years before

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                                    CASE NO.: 2:20-CV-8708-DMG

Plaintiff complained – only after trying several times to buy the domain name from Defendants, and never raising any legal claim at any of those times.

Plaintiff further suggests that Defendants failed to allege improper motivation, "only arguing without evidence that it attempted to 'extort' a smaller competitor."  [Opp., p.13].  This mischaracterizes Defendants' argument, especially insofar as there was never any competition between the parties. Defendants argue that Plaintiff had the "motivation to unreasonably maintain open litigation against Defendants, even with no hope of any useful remedy."  [Mot., Pg. 13].  Defendants proved that Plaintiff had tried several times unsuccessfully to buy the domain name, without ever raising any legal claim to it.  Then Plaintiff manufactured an unsuccessful UDRP complaint, and saw it struck down unanimously by three expert arbitrators.  Only then did Plaintiff manufacture its ACPA, trademark infringement and unfair competition claims – many years after Defendants' rebuffed Plaintiff's repeated efforts to buy the name.

Moreover, Defendant alleged that "Plaintiff's motivation was illegitimate because Plaintiff suffered no injury from Defendant's use of the Domain Name..." [Mot., Pg. 12].  Indeed, if Plaintiff had really believed its mark was harmed by Defendants activities, and that it had a "duty" to enforce its mark against Defendants' use, then it would have and should have raised such a claim long ago. Defendants' activities with the domain name had not changed in many years.

Even after the Court found the parties' businesses completely unrelated such that confusion was not reasonably possible, the Plaintiff persisted with a frivolous motion for reconsideration and a frivolous motion to continue the case schedule for another six months so it could pursue its trademark cancellation claim. (Even after it had done nothing whatsoever during the prior three-month extension the Court granted.). That forced Defendants' to oppose both motions, and to file a motion to dismiss the cancellation claim for lack of standing. It forced the Court to consider all of those motions, and to find in Defendants' favor each time.

## V.   Plaintiff's Litigation Tactics Were Unreasonable and Vexatious

Next, Plaintiff argues that this case is not exceptional because the vexatious litigation standard is no longer a requirement for a case to be exceptional. [Response, Pg. 16]. To the extent that Plaintiff is correct, this is because the *Octane Fitness* court <u>lowered</u> the standard from vexatious to unreasonable manner of litigation. 572 U.S. at 557. Thus, the fact that Defendant's behavior qualifies as vexatious also qualifies it as unreasonable, thus warranting an award of fees.

Defendants maintain that Plaintiff's conduct was designed from the outset to be vexatious, and was done despite knowing its claims were meritless. Plaintiff has sought to maintain costly litigation against Defendants, for the sole purpose of trying to force Defendants to sell their domain name property to Plaintiff for a price far below market value. Plaintiff implicitly admitted for many years that it

had no legal claim, as it repeatedly tried to buy the domain and never mentioned any legal claim. Its UDRP claim was then emphatically and unanimously denied. And only then did Plaintiff conjure up a federal lawsuit to try to increase its negotiating leverage. That effort was doomed to fail, as it did, but it reasonably cost Defendants more than $100,000 to defend against the vexations and unreasonable litigation. Plaintiff should be forced to compensate Defendants for those expenses, in order to deter Plaintiff and others from such future conduct.

## VI. **Defendants' Conduct in this Case Has Been Reasonable**

Plaintiff argues that Defendants acted unreasonably because they, "intentionally waited until 10:55 p.m. on the discovery cutoff date to produce evidence that they would use to support their *GoPets* defense." [Opp., p.9-10]. This argument is incredible, considering that the only evidence necessary to show that *GoPets* precluded an ACPA action is evidence that was already in the Plaintiff's possession; namely, the WHOIS record for the domain name, the Wayback Machine archive records cited in its UDRP complaint, and the fact that Plaintiff's mark had not been adopted when the domain was created. Moreover, what Plaintiff refers to as the "*GoPets* defense" is no affirmative defense at all. It is merely the Ninth Circuit reading the text of the ACPA and applying it to the facts, as several other courts in this Circuit have done since, several of them awarding attorneys' fees.

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                          CASE NO.: 2:20-CV-8708-DMG

Additionally, Plaintiff cites dismissal of Defendants' "reverse domain hijacking and Section 17200 causes of action" in order to argue that Defendants' claims were groundless. [Opp., p.2, 14-16 (*citing, Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1152 (C.D. Cal. 2010) (Gee, J.).]  However, that case stands for the proposition that "the sheer fact that a motion to dismiss is granted does not suffice to show that the claim was groundless, or was not a colorable claim."  Plaintiff provides no argument to show that the claims were groundless or undebatable, but only that they were dismissed.  Defendants' RDNH claim was premised on the argument that Plaintiff did cause the "suspension" of the domain name when it filed the UDRP complaint.  The Court held that the suspension ended when the Plaintiff lost the UDRP case, and so the RDNH claim could no longer lie.  [Dkt #37, Pg. 5].  That is a legal interpretation of the ACPA that is at odds with other precedents, but Defendants and their counsel adhered to the Court's decision and did not raise any RDNH issue again in the case.

Plaintiff makes other assertions about how Defendants' allegedly "multipled the proceedings." [Opp., p.16.]  But Plaintiff does not 17emonstrate how any of those allegations, even if true (which they generally are not), actually multiplied any proceedings.  All Plaintiff has done is make bare accusations of misconduct, with no evidence, and never having brought any such allegations to the attention of the court via motion to compel or other appropriate procedure.

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                    CASE NO.: 2:20-CV-8708-DMG

Plaintiff alleges that Defendant submitted false interrogatory responses: "Defendants' false response in discovery forced Pocketbook to subpoena Vistaprint, which had no evidence of Defendants ordering business cards in November and December of 2011." [Opp., p.18].  The court, however, has already recognized that Plaintiff has not proven this accusation, "Defendants have attached to their Reply a statement showing a Vistaprint charge on Ancevski's credit card in 2012, rebutting Vistaprint's statement that it had no record of Defendants having placed an order." [Dkt. #75, MSJ Order, p.20].  Plaintiff had three additional months to follow up this line of discovery, but made no effort to do so.

Plaintiff then goes on to say that "Defendants then nitpick a misstatement by Pocketbook's president, in support of the motion for reconsideration, regarding layperson knowledge of Archive.org sitemap feature." [Opp., p.18].  However, this "misstatement" by the president of a technology company was a specific claim about Archive.org that, if true, might have conveniently supported Plaintiff's motion for reconsideration.  And this "misstatement" directly contradicted discovery already provided by Plaintiff's counsel in this case.

Plaintiff points to nothing unreasonable at all in Defendants' vigorous defense of Plaintiff's fanciful, outrageous accusations.

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                    CASE NO.: 2:20-CV-8708-DMG

## VII. <u>Defendants' Attorneys' Fees Have Been Reasonable</u>

Plaintiff does not challenge Defendants' counsel's hourly rates, nor the total amount requested in the case. Plaintiff only argues that Defendants' counsel "block billed" the entire case. But that also is not true, as the Defendants stated that counsel's itemized billing invoices can be provided to the Court for *in camera* inspection if the Court so requests. Defendants cite *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("The applicant [for attorney's fees] . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."). In accord with *Hensley*, Defendants' counsel has maintained proper billing records in this litigation, which can be provided for *in camera* inspection.

Moreover, even for amounts that the Court deems block billed, if any, the Court should only reduce fees by 10% to 30%, rather than 100% as Plaintiff asserts.

> In *Welch*, the Ninth Circuit suggested that block billing may justify a reduction of up to 30% for block-billed time. *Id.* at 948; *see Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014) (construing *Welch* to authorize a district court "to reduce block-billed hours by 10% to 30%"); *see also Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010) (affirming district court's reduction of 80% of attorneys' and paralegals' hours by 30% for block billing).

*Hansen Cold Storage Constr. v. Cold Sys., Inc.*, 2022 WL 1199271, at *6 (C.D. Cal. Feb. 11, 2022). Thus, even if the Court were to find that Defendants' counsel engaged in block billing as to any specific billing entries the Court may wish to

review, then the amount of attorneys' fees awarded should be reduced only between 10% and 30% for those entries.

Plaintiff cites *Wilson v. Decibels of Or., Inc.*, 2018 U.S. Dist. LEXIS 137141, at *28, *30 (D. Or. Aug. 14, 2018) for the proposition that attorneys' fees are not recoverable for unsuccessful motions.  However, *Wilson* is highly distinguishable because it interprets an entirely different attorneys' fees statute than the one at issue in this case.  Also in this case, Defendants made a good faith attempt to dismiss the ACPA claim based on a relatively novel theory of claim preclusion, which the court expressly held that "Ninth Circuit has not taken up this issue before." [Dkt. #23, p.5].  That argument was based on a recent, specific precedent regarding the UDRP, and was in light of Plaintiff's unsuccessful UDRP complaint that was rejected by three unanimous experts.  While the Court disagreed with Defendants' argument, Defendants maintain that the argument was not frivolous nor raised for purposes of delay.  It was the only potential way to potentially dismiss the ACPA claim, as fact issues precluded a dismissal on any other basis.

Defendants maintain that their entire *Lodestar* attorneys' fees in this case are reasonable in light of the *AirFx* and *Dent* decisions on highly analogous facts, each in a less expensive jurisdiction, each awarding an even greater amount of fees.  Defendants notified Plaintiff of these rulings in prior briefing, but Plaintiff persisted anyway to prosecute this baseless litigation to its ultimate end.

REPLY BRIEF RE
MOTION FOR ATTORNEYS' FEES                          CASE NO.: 2:20-CV-8708-DMG

## Conclusion

Defendants have presented detailed arguments and evidence demonstrating that on multiple bases, this case was exceptional.  Defendants should be compensated the full amount of their reasonable attorneys' fees.  Not because they won, but because Plaintiff's litigation and actions prior to and during this case make it clear that Plaintiff had improper motivation, and vexatiously and unreasonably litigated well beyond any legitimate effort to "protect its trademark rights."  The facts and law in this case are highly analogous to the *AirFX* and *Dent* cases, in which fees were awarded in amounts greater than in this case.  Therefore, Defendants respectfully request that the Court order Plaintiff to pay all of Defendants' reasonable attorneys' fees.

Respectfully submitted,

**RODENBAUGH LAW**

Dated: July 29, 2022

By: _Mike Rodenbaugh_

Michael L. Rodenbaugh (SBN 179059)
RODENBAUGH LAW
548 Market Street - Box 55819
San Francisco, CA 94104
(415) 738-8087
mike@rodenbaugh.com

*Attorneys for Defendants*